Bobby FELDER, Plaintiff-Appellant-Cross Respondent-Cross Petitioner,

v.

Duane CASEY, Patrick Eaton, Robert Farkas, Peter Pochowski, Robert Connolly, Edward Heideman, Stanley Olsen, Roger Weber, Michael Kempfer and Gary Hoffman, Defendants-Respondents-Cross Appellants-Petitioners.

Supreme Court

*No. 85-1344. Argued May 31, 1989.—Decided June 27, 1989.*

(Also reported in 441 N.W.2d 725.)

For the petitioners there were briefs by *Grant F. Langley,* city attorney, and *Reynold Scott Ritter,* assistant city attorney, Milwaukee, and oral argument by *Scott G. Thomas,* assistant city attorney, Milwaukee.

For the cross-petitioner there were briefs by *Curry First, Barbara Zack Quindel* and *Perry, Lerner & Quindel, S.C.,* Milwaukee, and *Steven H. Steinglass,* Cleveland-Marshall College of Law, Cleveland, Ohio, and oral argument by *Mr. First.*

Amicus curiae brief was filed by *Gretchen Miller,* Milwaukee, and *Jeff Scott Olson* and *Julian, Olson & Lasker, S.C.,* Madison, for ACLU of Wisconsin Foundation, Inc.

SHIRLEY S. ABRAHAMSON, J. Our original decision in this case appears as *Felder v. Casey,* 139 Wis. 2d 614, 408 N.W.2d 19 (1987), reversing an unpublished decision of the court of appeals filed on April 24, 1986. Our decision was reversed, in turn, by the United States Supreme Court. See *Felder v. Casey,* — U.S. —, 108 S. Ct. 2302 (1988). On remand from the Supreme Court, we issued an order dated August 23, 1988, vacating this court's mandate and affirming the decision of the court of appeals.

The parties filed motions for reconsideration of our August 23 order. They argued that affirmance of the decision of the court of appeals was premature because our court had, in the first review, considered only one of the issues that the parties had preserved for review.

On November 15, 1988, we granted the motions for reconsideration, withdrew our order of August 23, 1988, and ordered the parties to brief the following issues:

> (1) the proper statute of limitations to be applied in this case;
> (2) whether the existence of post-deprivation state tort remedies precluded the institution of plaintiff's action under 42 U.S.C. sec. 1983; and

460

(3) whether plaintiff's claims against defendants Michael Kempfer and Gary Hoffman should be reinstated.

We conclude that the two-year statute of limitations is not applicable to the plaintiff's section 1983 action and that the plaintiff's section 1983 action against the eight defendants named in the second amended complaint was begun within the period prescribed by law.[1] We conclude, as did the court of appeals, that the circuit court erred in dismissing the action against the eight defendants on this ground. We further conclude that the plaintiff's section 1983 fourth amendment claim is not precluded by the existence of post-deprivation state tort remedies. Accordingly, we affirm that part of the decision of the court of appeals reversing the circuit court's dismissal of the plaintiff's action against the eight defendants. We also conclude that the circuit court erred in dismissing with prejudice the plaintiff's action against defendants Kempfer and Hoffman. We therefore conclude that the plaintiff's action against these two defendants should be reinstated. The court of appeals did not address this issue, and in this respect we modify the decision of the court of appeals.

---

[1] 42 U.S.C. sec. 1983 provides in relevant part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution, and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

## I.

This case comes before us with a lengthy and somewhat complicated procedural history. On April 2, 1982, Bobby Felder, the plaintiff, filed this action in Milwaukee County Circuit Court, alleging that he had been assaulted and battered by Milwaukee police officers, in violation of his civil rights, and seeking damages and attorneys' fees pursuant to 42 U.S.C. secs. 1983, 1985(2), and 1988. The plaintiff's complaint also included state law tort claims.

At the close of the plaintiff's case, after four days of testimony, the circuit court granted several of the defendants' motions to dismiss the plaintiff's action. First, the circuit court dismissed the plaintiff's claims based on state tort law against all ten defendants for failure to comply with Wisconsin's notice of claim statute, sec. 893.80 (1)(a), Stats. 1981. The circuit court refused, however, to dismiss the remaining federal civil rights claims, holding that the claims based on federal statutes were not subject to the state notice of claims statute.

The circuit court then dismissed the federal claims against the eight defendants who had been added as defendants in the plaintiff's second amended complaint, holding that the two-year statute of limitations for intentional torts, sec. 893.57, Stats. 1981–82, applied to the plaintiff's federal civil rights claims in this case.[2]

The circuit court ultimately dismissed the plaintiff's action against the remaining two defendants. After the

---

[2] Sec. 893.57, Stats. 1981–82, provides as follows:

> An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within two years after the cause of action accrues or be barred.

circuit court dismissed the action against the other eight defendants, the plaintiff moved for a mistrial and for dismissal without prejudice, arguing that his case against the two remaining defendants was prejudiced by the dismissal of the action against the eight codefendants after the plaintiff had presented his case. The circuit court denied the plaintiff's motions. At that point, the plaintiff refused to continue participating in the trial against the remaining two defendants, and the circuit court granted the defendants' motion to dismiss the claims against the remaining two defendants with prejudice on the grounds of the plaintiff's failure to prosecute.

On appeal to the court of appeals, the plaintiff challenged the circuit court's holdings on the applicability of the two-year statute of limitations and the dismissal of the case against all defendants with prejudice. The defendants asserted on appeal that all claims, including the federal civil rights claims, were barred by the plaintiff's failure to comply with the notice of claim statute. The defendants also argued that, under *Parratt v. Taylor,* 451 U.S. 527 (1981), the plaintiff's due process claims were barred because the plaintiff had adequate post-deprivation tort remedies under state law.

The court of appeals upheld the circuit court's decision that the notice of claim statute does not apply to the federal claims. The court of appeals concluded that the circuit court erred in holding that the applicable statute of limitations was two years. The court of appeals declared that the appropriate limitations period was the three-year period that governs an action to recover damages for injuries to the person under sec. 893.54 (1), Stats. 1981-82. The court of appeals further held that *Parratt* was not applicable to the section 1983 claim in this case and that the existence of state tort remedies did not affect the plaintiff's section 1983

action. Accordingly, the court of appeals reversed that part of the circuit court judgment dismissing the action against the eight defendants.

This court granted review and, on a divided vote, concluded that the court of appeals erred in holding that the plaintiff did not have to comply with the notice of claim issue for purposes of the federal civil rights claims. We remanded the case with instructions to dismiss the action.

The United States Supreme Court reversed our mandate, holding that the state notice of claim requirement is preempted when section 1983 actions are brought in state court. We now consider the three remaining issues that the plaintiff and defendants advanced on appeal and which this court, on granting the motions to reconsider, asked the parties to address.

## II.

The first issue is whether the court of appeals erred in applying sec. 893.54 (1), Stats. 1981–82, the three-year statute of limitations governing an action to recover damages for injuries to the person, to the plaintiff's section 1983 claim.[3]

The incident giving rise to this action took place on July 4, 1981. The plaintiff filed his original complaint on April 2, 1982, approximately nine months later, naming Michael Kempfer and John Doe as defendants. On January 3, 1983, the plaintiff amended his complaint, again naming Kempfer and adding as additional defendants officers John Bauer, Joseph Husar and Gary Hoffman.

---

[3] Sec. 893.54 (1), Stats. 1981–82, provides as follows:

The following actions shall be commenced within 3 years or be barred:
(1) An action to recover damages for injuries to the person.

On March 8, 1984, two years and eight months after the alleged assault, the plaintiff filed his second amended complaint, adding as defendants officers Eaton and Farkas, and officers Connolly, Heideman, Pochowski, Olsen and Weber, the City of Milwaukee, former Police Chief Breier, Captain Casey, and Police Academy Director Ziolkowski. Defendants Bauer, Husar, Breier, Ziolkowski and the City were later voluntarily dismissed.

No federal statute of limitations specifically governs section 1983 actions. Interpreting 42 U.S.C. sec. 1988, the United States Supreme Court had concluded that in a section 1983 action, the courts should apply the state's statute of limitations governing a state cause of action most analogous to a section 1983 action. *Bd. of Regents of University of the State of New York v. Tomanio,* 446 U.S. 478, 483–84 (1980).

The circuit court in this case originally held that sec. 893.57, Stats. 1981–82, the two-year statute of limitations governing intentional torts, governed the plaintiff's section 1983 actions. Accordingly, the circuit court dismissed the claims against all of the defendants added in the second amended complaint, leaving only officers Kempfer and Hoffman (the two officers named in the first amended complaint who had not been voluntarily dismissed) as defendants.

On April 17, 1985, after the circuit court's ruling and before entry of judgment, the United States Supreme Court issued its decision in *Wilson v. Garcia,* 471 U.S. 261 (1985). *Wilson* stated that "a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose," and it construed 42 U.S.C. sec. 1988 "as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Wilson, supra,* 471 U.S. at 272, 275. To guide the courts in selecting the most appropriate statute of limitations,

the Court said: "Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights." *Id.* at 278. In its opinion, the Court characterized section 1983 actions both as pertaining to "general personal injury actions," 471 U.S. at 279, and as remedies for "injuries to personal rights." 471 U.S. at 278.

On reconsideration, the circuit court changed its decision on the applicable limitations period, declaring that, under the *Wilson* case, sec. 893.54 (1), Stats. 1981–82, the three-year statute of limitations for injuries to the person, was the correct choice for section 1983 cases. The circuit court applied *Wilson* prospectively, however, and so reaffirmed its prior decision dismissing the section 1983 action against all defendants except the two defendants who were served within the two-year limitations period.

The court of appeals reversed the circuit court's dismissal, citing *Wilson v. Garcia, supra* 471 U.S. 261 (1985), and *Hanson v. Madison Service Corp.,* 125 Wis. 2d 138, 370 N.W.2d 586 (Ct. App. 1985), as authority for its conclusion that the circuit court had erred in applying the two-year statute of limitations to this section 1983 case. The court of appeals agreed with the circuit court that the three-year personal injury statute of limitations, sec. 893.54 (1), was the most appropriate choice between the two and the three-year statutes. The court of appeals held, however, that the three-year statute should have been applied to the section 1983 claims in this case which arose before the *Wilson* decision.

In their most recent briefs to this court, the parties reargued the issue of whether the two or the three-year statute of limitations applies. At oral argument the parties agreed, however, that a recent decision by the

United States Supreme Court has, for purposes of this case, settled this question in favor of the plaintiff. In *Owens v. Okure,* — U.S. —, 57 U.S.L.W. 4065 (1989), the Court stated that "[a] rule endorsing the choice of the state statute of limitations for intentional torts would be manifestly inappropriate." *Id.* at 4067. At oral argument, the defendants conceded that, in light of *Owens,* the two-year statute of limitations was not applicable to section 1983 claims.

While the *Owens* decision clearly excludes the two-year statute, it does not entirely resolve the question of which Wisconsin personal injury statute of limitations applies to section 1983 claims. The *Owens* opinion instructs state courts to apply the "general or residual statute of limitations governing personal injury actions" in section 1983 cases. *Id.* at 4068. Wisconsin has both a three-year statute that applies to an action to recover damages for injuries to the person, sec. 893.54, Stats. 1981–82, and a six-year statute, sec. 893.53, 1981–82, that applies to an action to recover damages for an injury to the rights of another except where a different period is expressly prescribed.[4]

The amicus, ACLU of Wisconsin Foundation Inc., in its brief in this case, urges us to hold that sec. 893.53, the six-year residual statute of limitations, is the most appropriate statute to govern section 1983 actions brought in Wisconsin courts.

---

[4] Sec. 893.53, Stats. 1981–82, provides as follows:

An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred.

We do not address the question whether the three-year or the six-year statute applies to section 1983 actions because that question is not presented by the facts of this case and was not briefed or argued by the parties.[5] The plaintiff's action is timely under either the three-year period prescribed by sec. 893.54 (1) or the six-year period prescribed by sec. 893.53. Thus, the *Owens* decision resolved the only relevant issue here, the question of the applicability of the two-year statute. We hold that the two-year statute is not applicable to the plaintiff's section 1983 action.

The only remaining question related to the statute of limitations is whether the circuit court erred in concluding that the *Wilson* decision, which the circuit court read as mandating the three-year statute of limitations, was prospective only in its application, thereby barring the plaintiff's claim against those eight defendants served after the two-year period had run. We agree with the court of appeals' holding, adhering to *Hanson v. Madison Service Corp.*, 125 Wis. 2d 138, 140, 370 N.W.2d 586 (Ct. App. 1985), that the *Wilson* decision is not prospective only in application.[6] The *Hanson* deci-

---

[5] The applicability of the three and six-year statutes of limitations was discussed in the briefs in *Lindas v. Cady,* 150 Wis. 2d 421, 441 N.W.2d 705 (1989), argued on the same day as this case and decided on other grounds.

[6] The plaintiff also argues that the defendants waived their right to raise the statute of limitations as a defense to the section 1983 action because the defense was plead only generally in the answer and not specifically included in the defendants' motions. We conclude that the defense was not waived. The defense was included in the answer and subsequently argued at trial, albeit after the circuit court *sua sponte* introduced the issue in the

sion, determining that *Wilson* applies to actions begun before the date of that decision, is consistent with decisions from other jurisdictions. See, *e.g., Small v. Belfast,* 796 F.2d 544, 549, n. 6 (1st Cir. 1986); *Farmer v. Cook,* 782 F.2d 781 (8th Cir. 1986); *Rivera v. Green,* 775 F.2d 1381 (9th Cir. 1985).[7]

In summary, we hold that the two-year statute of limitations is not applicable to the plaintiff's section 1983 action; that the action against the eight defendants named in the second amended complaint was begun within the period prescribed by law; and that the circuit court erred in dismissing the section 1983 action against the eight defendants.

## III.

The second issue presented for review is whether the existence of post-deprivation state tort remedies precluded the institution of plaintiff's action under section 1983.

The defendants assert that the plaintiff's section 1983 action should be dismissed because it alleges common law torts, not constitutional torts. See Wells and Eaton, *Substantive Due Process and the Scope of Constitutional Torts,* 18 Ga. L. Rev. 201, 208–09 (1984), for a general discussion of this distinction. The defendants rely on *Parratt v. Taylor,* 451 U.S. 527 (1981), in which the Supreme Court concluded that a state prisoner did not set forth an actionable section 1983 claim when he

context of arguments on the statute of limitations applicable to the state tort claims.

[7] In *Hanson* the court held that the three-year rather than the two-year statute of limitations applied to section 1983 actions. The court of appeals did not consider the applicability of the six-year statute in *Hanson.*

alleged that prison guards negligently lost his property in violation of the fourteenth amendment guarantee that property may not be taken without due process. The Court held that an adequate post-deprivation remedy under state law provided the process that was due for purposes of the fourteenth amendment and section 1983.

The plaintiff argues that this case involves a violation of a specific provision of the Bill of Rights, the fourth amendment, and that *Parratt* is inapplicable to a section 1983 action based on a deprivation of a fundamental right expressly guaranteed by the fourth amendment, namely freedom from unlawful searches and seizures. The plaintiff argues that because this section 1983 action rests on the fourth amendment, it is not governed by *Parratt.*[8]

There has been considerable discussion and disagreement among commentators and courts about the meaning and scope of *Parratt.* This court has observed that *Parratt* "[t]o say the least . . . is confusing." *Enright v. Milwaukee School Directors Board,* 118 Wis. 2d 236, 251, 346 N.W.2d 771 (1984). One reason for the confusion is that the *Parratt* decision did not distinguish between substantive and procedural due process. *Enright, supra,* 118 Wis. 2d at 256.

The court of appeals accepted the plaintiff's position, holding that *Parratt* is limited implicitly to procedural due process claims and is thus inapplicable to the fourth amendment claim at issue in this case.

We also conclude that *Parratt* is inapplicable to the plaintiff's section 1983 fourth amendment claim. In *Graham v. Connor,* 57 U.S.L.W. 4513 (May 15, 1989), as in

---

[8] The plaintiff argues that *Parratt* is not applicable to substantive due process claims, that is, to claims that state action results in deprivation of a fundamental right regardless of the process afforded the plaintiff.

this case, the section 1983 claim arose from an incident in which police officers allegedly injured a person in the course of an investigative stop and subsequent arrest. The complainant in *Graham* filed suit under section 1983, alleging the use of excessive force in violation of "rights secured to him under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983." The district court granted the defendants' motion for a directed verdict after finding that the police officers' actions were taken "in a good faith effort to maintain and restore discipline." The Supreme Court reversed, holding that this "good faith" standard, which had become the traditional test for excessive force claims, was inappropriate.

The Court then set forth the proper method of analyzing excessive force claims brought under section 1983 as follows: The first step is to identify the specific constitutional right allegedly infringed by the challenged police conduct. In most instances, said the Court, it will be either the fourth amendment's prohibition against unreasonable seizure of the person or the eighth amendment's ban on cruel and unusual punishment. Second, the Court must judge the validity of the claim by reference to the specific constitutional standard which governs the right.

The Court characterized the excessive force claim arising in the context of an arrest or investigatory stop of a free citizen as invoking the protections of the fourth amendment. The Court held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 57 U.S.L.W. at 4516 (emphasis in the

original).[9]

The Court criticized the lower court's practice of "indiscriminately" applying the substantive due process analysis, which had evolved out of *Rochin v. California,* 342 U.S. 165 (1952), and *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973), to all excessive force cases, without considering whether the alleged offense might implicate a more specific constitutional right. *Id.* at 4515. The Court concluded that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 4516.

In light of *Graham,* we conclude that plaintiff's section 1983 fourth amendment allegations fall outside of the scope of the *Parratt* rule. See *Parratt,* 451 U.S. at 536; *Weber v. City of Cedarburg,* 129 Wis. 2d 57, 77 n. 8, 384 N.W.2d 333 (1986). The defendants appear to argue that the plaintiff did not assert a fourth amendment claim but rather was asserting only a due process claim. We have examined the complaint, the record before us (which does not include a complete trial transcript) and the briefs. We conclude that the plaintiff was asserting a fourth amendment claim. The fourth amendment was specifically cited in the plaintiff's second amended com-

---

[9] The Supreme Court observed that it was explicitly stating in *Graham* what was implicit in an earlier decision, *Tennessee v. Garner,* 471 U.S. 1, 7-22 (1985), upon which the plaintiff relies. The Court's position that all excessive force claims should be brought under the fourth amendment was urged earlier by other courts and scholars. See, *e.g. Lester v. City of Chicago,* 830 F.2d 706 (7th Cir. 1987); Freyermuth, *Rethinking Excessive Force,* 1987 Duke L.J. 692.

plaint and was asserted and acknowledged at the trial proceedings and in the appellate proceedings.

We conclude that the existence of post-deprivation state tort remedies does not preclude the plaintiff's bringing a fourth amendment claim under 42 U.S.C. sec. 1983.[10]

## IV.

Finally, the plaintiff argues that the circuit court abused its discretion by dismissing the plaintiff's case against defendants Kempfer and Hoffman for plaintiff's failure to proceed with the case after the circuit court denied the plaintiff's motions for a mistrial and for dismissal without prejudice.

In order to examine this question, we begin with the facts underlying the various allegations against the ten codefendants. In the early evening of July 4, 1981, two police officers, both of whom were voluntarily dismissed as defendants before trial, stopped the plaintiff for questioning. The officers were in the neighborhood responding to a call from one of the plaintiff's neighbors. Officers Kempfer and Hoffman arrived on the scene next, followed by five other officers, all members of the police department tactical squad ("tac" squad).

---

[10] The plaintiff asserted at oral argument that he had also stated claims alleging that the beating by the defendants was racially motivated and thus a denial of equal protection and that after the beating and arrest there was a racially motivated conspiracy to cover up the incident. The plaintiff argued, and the defendant did not dispute, that *Parratt* does not apply to equal protection or section 1985 (2) claims. The plaintiff's January 9, 1989, brief notes at p. 38 that "[t]he defendants do not suggest that the existence of postdeprivation remedies is relevant to plaintiff's statutory claim under 42 U.S.C. § 1985 (2)."

Three other officers who were not at the scene of the July 4 incident had contact with the plaintiff at the fifth district police station and were involved in the investigation of the incident. They also were named defendants.

The complaint alleges that the five "tac" squad members and Kempfer beat the plaintiff, dragged him, face down and handcuffed, on the ground, and injured his head by throwing him into the police van.

The complaint does not claim that Hoffman assaulted the plaintiff. Hoffman is named in the complaint as the officer who arrested the plaintiff's neighbor when the neighbor tried to intervene. The complaint asserts that all officers at the scene failed to restrain the officers who were allegedly assaulting the plaintiff.

The complaint alleges that all ten defendants also were, in varying capacities, participating in and furthering a racially motivated conspiracy to cover up the incident. The plaintiff is black; all the defendants are white. The complaint alleges that the conspiracy began with Kempfer's writing a citation falsely charging the plaintiff with disorderly conduct.

The plaintiff maintains that his case against the two remaining defendants, officers Kempfer and Hoffman, was severely prejudiced by dismissal of the complaint against eight other defendants after the plaintiff had put in his case.

The plaintiff argues that he organized and presented his case in a manner intended to assist the jury in dealing with the multiple defendants and multiple claims. Thus, the posture of the case changed significantly when the claims against eight defendants were dismissed after the close of the plaintiff's case. Kempfer and Hoffman were, the plaintiff argues, "secondary" defendants in some respects, and thus the evidence related to their

activities was not presented in the way it would have been had the claims against other defendants been dismissed before trial. The primary issue, according to the plaintiff, is the allegation of excessive force. Although Kempfer is included in that claim, the evidence mainly documents the actions of the members of the "tac" squad.

Thus, according to the plaintiff, much of the evidence presented during the four days of trial was not directly related to Kempfer and Hoffman. Therefore, the plaintiff argues, the jury would have been confused and was likely to have concluded that the "heart" of the case was gone. The plaintiff further argues that, given the complexity of the relationships between the various defendants, both in their activities at the site of the incident and afterward, the likelihood of jury confusion was significant.

The plaintiff asserts that, in fairness to him, the circuit court should at least have allowed the matter to proceed through verdict and rendered a determination on the statute of limitations question in post-verdict motions. The plaintiff suggests that perhaps no appeal may have arisen had the circuit court deferred its decision and the jury found for the defendants.

At trial, the plaintiff advanced these arguments in support of his motion for a mistrial as to defendants Kempfer and Hoffman, and he asserted the same arguments in support of his motion to dismiss the action against the two defendants without prejudice. The circuit court denied the motion for mistrial, explaining its decision as follows:

> THE COURT: On the matter of a motion for mistrial, there has been no error that has been mentioned as a basis for mistrial in this case. The Court has made various rulings dismissing eight of the

officers. If this is, in fact, error, why, it is subject obviously to correction; but as far as mistrial is concerned, this kind of remedy is singularly inappropriate.

The grounds that are cited for it is that there might be prejudice resulting as a result of the Court's ruling. By granting the motion, this will not in any way relieve the kind of prejudice that has been suggested exists in this case. Motion is denied.

The circuit court next denied the plaintiff's motion for dismissal without prejudice, apparently for similar reasons. The plaintiff then refused to proceed with the trial. The circuit court responded by dismissing the claims against defendants Kempfer and Hoffman with prejudice.

A circuit court's decision to dismiss a case for want of prosecution is addressed to the sound discretion of the court. An appellate court will affirm the dismissal unless an abuse of discretion is clearly shown. Appellants who seek to set aside a dismissal order must show a clear and justifiable excuse for their failure to proceed.

Considering the complex nature of the case and the court's dismissal of eight codefendants after the plaintiff had put in his entire case over four days of trial, we conclude that the circuit court abused its discretion in dismissing the plaintiff's causes of action against officers Kempfer and Hoffman with prejudice. We conclude that the plaintiff established a clear and justifiable excuse for his failure to proceed in this case. He had prepared and presented a case involving several separate allegations against ten officers. Claims were based on the defendants' failure to restrain fellow officers and conspiracy claims were based on a theory of cooperation among the

officers, supported by evidence of the interaction of various defendants. Evidence presented during the four days of trial would have been irrelevant or peripheral to the case against the two remaining defendants. We conclude that the plaintiff had clear justification for believing that his case was significantly prejudiced by the change of circumstance occasioned by the court's midtrial disposition of the statute of limitations question and the dismissal of the action against eight of the ten defendants. The circuit court's conclusory statement that granting a mistrial "will not in any way relieve the kind of prejudice that has been suggested exists in this case" is not an adequate response to the plaintiff's concerns.

A party may not, of course, unilaterally terminate the proceedings without prejudice by refusing to proceed for fear of prejudice caused by the circuit court's rulings. The circumstances presented by this case are unusual.

Considering the nature of the cause of action and the timing of the circuit court's dismissal of eight defendants, we conclude that the circuit court abused its discretion by dismissing the plaintiff's action with prejudice on the grounds of plaintiff's failure to prosecute. We hold that defendants Kempfer and Hoffman should be reinstated as defendants.

For the reasons set forth above, we remand this cause for a new trial for the ten defendants.

*By the Court.*—The decision of the court of appeals is modified, and as modified, is affirmed.

LOUIS J. CECI, J. (dissenting in part). I do not understand what it is that the majority claims, in section IV of its decision, the circuit court should have done. Should the circuit court have resumed the trial without the plaintiff or his attorney? I believe that the circuit court *must* dismiss a cause of action when the plaintiff

expressly refuses to proceed. The plaintiff has the obligation to proceed, and if an adverse verdict is rendered, the plaintiff may appeal the decision of the circuit court which required him to proceed. There was no abuse of discretion, and, therefore, I dissent only from the holding of section IV of the majority's decision.

I am authorized to state that JUSTICE WILLIAM G. CALLOW joins in this dissenting opinion.