885 F.2d 399
 50 Fair Empl.Prac.Cas. 1575,
51 Empl. Prac. Dec. P 39,360
Cheryll GRAY, f/k/a Cheryll Lengyel, Plaintiff-Appellant,
v.
Jerome LACKE, Stanley Klein, David Niemann, and Diane Kohn,
Defendants-Appellees.
 No. 88-3334.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 31, 1989.
Decided Sept. 22, 1989.
Rehearing and Rehearing En Banc Denied Nov. 3, 1989.
 
 A. Steven Porter, Madison, Wis., for plaintiff-appellant.
 Kristi A. Gullen, Judith Toole, Office of the Corp. Counsel, Madison, Wis., for defendants-appellees.
 Before CUMMINGS and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 The plaintiff-appellant, Cheryll Gray, brought this suit against Jerome Lacke, Stanley Klein, David Niemann, and Diane Kohn, the defendants-appellees, pursuant to 42 U.S.C. Sec. 1983. In her complaint, she alleges that the appellees deprived her of her rights guaranteed by the first and fourteenth amendments to the Constitution. The appellees filed a motion to dismiss, which the district court granted. 698 F.Supp. 750 (W.D.Wis.1988). In dismissing her complaint, the district court ruled that Gray's claims either were barred by Wisconsin's three-year statute of limitations for personal injury or failed to state claims for relief.
 
 
 2
 On appeal, the appellant raises three primary issues. First, Gray contends that the district court erred in applying Wisconsin's three-year personal injury statute of limitations to her Sec. 1983 claims. Second, she argues that she properly alleges claims for relief under Sec. 1983 for deprivation of her equal protection and due process rights guaranteed by the fourteenth amendment. Finally, Gray claims that she was unlawfully retaliated against by the appellees for her speech and petitions for redress of grievances, which were protected by the first amendment because they touched upon matters of public concern.
 
 
 3
 In support of the district court's granting of their motion to dismiss, the appellees raise three other issues. They argue that Gray's claims are barred by res judicata and collateral estoppel. Additionally, they claim that Gray's action is barred because she did not timely serve them with the complaint under Wisconsin law. Finally, they contend that some of her claims are barred by a prior settlement agreement. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings.
 
 I. Statement of Facts
 
 4
 Because Gray appeals from the district court's dismissal of her action, we accept all factual allegations contained in her complaint as true. See Fontana v. Elrod, 826 F.2d 729, 731 (7th Cir.1987); Redfield v. Continental Casualty Corp., 818 F.2d 596, 605-06 (7th Cir.1987). Therefore, we recite the facts as Gray alleges them in her complaint.
 
 
 5
 On March 4, 1977, Gray began working as a communications operator with the Technical Services Division of the Dane County Sheriff Department. Gray, along with four other women, became the first group of women hired into nonclerical positions in the Technical Services Division. In July 1979, Gray and two other women who held the position of communications operator filed union grievances on the ground that they received less money than male employees who had previously performed the same duties. Their supervisor, Sergeant Lawrence Larson, became angry with them for filing the grievances. He abused them verbally and threatened to have them dismissed.
 
 
 6
 In 1979, one of Gray's supervisors, Niemann, made sexual advances toward her during working hours. Niemann informed Gray that her chances for promotion and other employment benefits, which he controlled as manager-in-charge of technical services, depended upon her submission to his sexual advances. He further told Gray that communicator positions would soon be available and that he determined who would get those positions. Gray, however, steadfastly refused Niemann's sexual advances. Gray eventually applied for a position as a communicator. Although she was qualified for the job, she did not receive the promotion.
 
 
 7
 On February 4, 1980, Gray complained to Niemann and Kohn that one of Gray's supervisors had made submission to his sexual advances a prerequisite to employment benefits. Neither Niemann nor Kohn, however, investigated or addressed Gray's allegation. Instead, Niemann tried to cause Gray's termination from the Dane County Sheriff Department. Although Niemann was unsuccessful, he did cause her to receive a thirty-day suspension without pay for insubordination.
 
 
 8
 Later that same month, Gray filed a discrimination complaint against Dane County with the Dane County Affirmative Action Commission. Gray filed her complaint on behalf of herself and all other female communications operators. At least one other female communications operator filed a similar complaint. Six months later, Gray filed a sex-discrimination complaint with the State of Wisconsin. After filing her complaint with Wisconsin, a newspaper reporter from Madison interviewed Gray concerning her allegations of sex discrimination at the Dane County Sheriff Department. The newspaper carried an article which repeated her allegations and noted the various complaints and union grievances she had filed. Eventually, Gray and Dane County settled the sex discrimination case that Gray had filed with the State of Wisconsin.
 
 
 9
 The settling of Gray's complaint did not end her employment woes. In November 1981, Gray applied for a position as an Income Maintenance Worker with Dane County. Although she was qualified for the job, Gray did not receive the position because her supervisors, including each of the appellees, gave negative references regarding her. Sometime between 1981 and 1983, however, Gray apparently changed jobs within the Dane County Sheriff Department and became a jail booking clerk.
 
 
 10
 On September 19, 1983, Gray voluntarily transferred to the Records Department of the Sheriff Department because Klein represented to her that the transfer would be for only six months and that she would receive valuable computer training. Contrary to Klein's representations, Gray was not allowed to work with computers in the Records Department, and her requests for computer training were denied. Instead, supervisor Kohn assigned Gray to duties which were beneath her job classification. Kohn watched Gray's work much more closely than other employees, held Gray to a higher standard of performance than Gray's coworkers, and meticulously kept track of Gray's activities in a file. Moreover, Kohn tried to turn Gray's coworkers against her by encouraging them to complain about Gray. A few months later, Gray filed a union grievance on behalf of herself and other jail booking clerks, all of whom were female, alleging that they were paid less than male employees who had previously performed the same duties. In her grievance, Gray requested that the jail booking clerks be reclassified and paid at a higher wage level. The parties eventually settled this grievance, and Gray and her coworkers became classified at a higher rate of pay.
 
 
 11
 After being in the Records Department for more than six months, Gray requested a transfer back to her position as a jail booking clerk. Although Klein had represented to her that her stint in the Records Department would last only six months, each of the appellees, including Klein, participated in denying her requests to transfer. In November 1984, Gray again tried to leave the Records Department of the Dane County Sheriff Department. This time she applied for the position of paralegal with the Dane County District Attorney's Office. This position would have been a promotion for Gray, giving her an increase in salary and employment benefits. Although Gray was qualified for the job, she did not get it because the appellees provided negative references regarding her. Two months later, Gray again requested a transfer back to her position as a jail booking clerk. The appellees denied her request.
 
 
 12
 Starting in March 1985, the appellees altered Gray's work schedule in order to eliminate her work breaks and shorten her lunch period. In response, Gray filed yet another grievance concerning her working conditions. While her grievance was pending, Gray continued to have difficulty in getting along with her supervisors. The appellees reprimanded her both orally and in writing, and they selectively enforced work rules against her in an invidious manner. On one occasion, Kohn and Niemann questioned Gray about a conversation she had with a coworker the previous day. During their questioning, Kohn and Niemann spoke to Gray in an abusive and threatening manner. Their meeting ended only after Gray agreed, under protest, to provide a written statement describing the contents of her conversation with her coworker.
 
 
 13
 On May 14, 1985, Gray's grievance reached the Personnel Committee of the Dane County Board of Supervisors. The Personnel Committee recommended that Lacke reassign Gray so that she would not be supervised by Kohn and Niemann and would be performing tasks commensurate with her job level. Although Lacke was reluctant at first, he finally reassigned Gray back to her former position as a jail booking clerk. Upon reassignment, her direct supervisor was Klein, who immediately directed a sergeant to watch Gray's work and report back to him.
 
 
 14
 In June 1985, Gray applied for a position as an Administrative Services Supervisor I at the Dane County Hospital and Home. Although she was qualified for the job, she did not get this promotion because the appellees provided negative references about her. Later that month, Gray filed another sex-discrimination complaint with the State of Wisconsin. Her filing of a complaint, however, did not deter the appellees. Instead, they continued to harass her at work. Klein directed other supervisors to file written complaints about Gray, and Lacke had her sick-leave checked. Moreover, she was denied overtime work when she wanted it and was forced to work overtime when it was inconvenient for her.
 
 
 15
 On April 18, 1988, Gray filed this lawsuit in the district court, alleging that the appellees had deprived her of her rights guaranteed by the first and fourteenth amendments to the Constitution in violation of 42 U.S.C. Sec. 1983.[1] She sued the appellees in both their individual and official capacities. The appellees moved to dismiss her complaint for the following reasons: (1) the complaint failed to state a claim for relief; (2) Gray's claims are barred by prior settlement agreements; (3) her claims are barred by res judicata and collateral estoppel; and (4) most of Gray's claims are barred by the applicable statute of limitations. The district court granted the motion to dismiss on various grounds. First, the court found that her suit against the appellees in their official capacities was barred by res judicata, although she could still maintain her suit against them in their individual capacities. Second, the district court found that Wisconsin's three-year statute of limitations for personal injury barred all claims arising from the appellees' acts taken prior to April 18, 1985. Finally, the court found that the rest of her action failed to state claims for relief under Sec. 1983.
 
 II. Res Judicata and Collateral Estoppel
 
 16
 The appellees argue that the principles of res judicata and collateral estoppel preclude Gray from maintaining this action. They contend that this action was already unsuccessfully litigated by her in a prior suit against Dane County. See Gray v. County of Dane, 854 F.2d 179 (7th Cir.1988). In that suit, Gray sued Dane County under Sec. 1983 and Title VII for sexual harassment, wage discrimination, and retaliation based on similar allegations to those contained in her complaint in this lawsuit. Because Gray failed to show that the alleged discrimination and retaliation she suffered was due to a policy or custom of Dane County, the district court dismissed her action for failure to state a claim. The district court also ruled that Gray had failed to show a deprivation of her equal protection or first amendment rights. Our court affirmed the district court solely on the basis that her complaint failed to show that the alleged discriminatory actions were done pursuant to a policy or custom of Dane County. Id. at 184. Our court expressly refused to decide whether she had adequately alleged deprivation of her rights guaranteed by the first and fourteenth amendments. Id. at 182.
 
 A. Res Judicata
 
 17
 Under the doctrine of res judicata (claim preclusion), a final judgment on the merits of an action bars further claims by the parties or their privies based on that same action. Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); Beard v. O'Neal, 728 F.2d 894, 896 (7th Cir.), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984). Moreover, res judicata bars not only those issues that the parties actually litigated, but also any issue which the parties could have raised in the prior action. Whitley v. Seibel, 676 F.2d 245, 249 n. 7 (7th Cir.), cert. denied, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982); Harper Plastics, Inc. v. AMOCO Chems. Corp., 657 F.2d 939, 945 (7th Cir.1981). In order for res judicata to apply to this suit, the appellees must show the following three elements: (1) a final judgment on the merits in Gray's prior suit against Dane County; (2) an identity of the cause of action in her suit against Dane County and the present action; and (3) an identity of parties or their privies in Gray's prior suit and the instant action. See Shaver v. F.W. Woolworth Co., 840 F.2d 1361, 1364 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); Brown v. J.I. Case Co., 813 F.2d 848, 854 (7th Cir.), cert. denied, 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987).
 
 
 18
 Gray contends that the doctrine of res judicata is inapplicable to this lawsuit because the appellees are not privies of Dane County. Suits against employees in their official capacities are essentially suits against the government entities for which they work. Monell v. Department of Social Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); Conner v. Reinhard, 847 F.2d 384, 394 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988). Therefore, in official-capacity suits, privity exists between government entities and their employees. Beard, 728 F.2d at 897; Lee v. City of Peoria, 685 F.2d 196, 199 n. 4 (7th Cir.1982), and a plaintiff must show that the government employee was acting according to a policy or custom of the government entity, Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Based on these principles, the doctrine of res judicata bars this lawsuit. Since our court determined in her prior suit against Dane County that Gray's supervisors were not acting according to a custom or policy of Dane County, Gray, 854 F.2d at 184, that case bars her current suit against the appellees in their official capacities.
 
 
 19
 Gray, however, has also sued the appellees in their individual capacities. See Plaintiff's Complaint, Rec. 2, p 46, at 20. Thus, the issue remains whether the appellees in their individual capacities are privies of Dane County. The appellees argue that as employees of Dane County, they are necessarily its privies. This argument is without merit.
 
 
 20
 Our court has already resolved this identical issue in Conner, 847 F.2d at 384. In that case, Conner had originally brought suit against the City of Green Bay under Sec. 1983, alleging that she was discharged in violation of her first amendment right to freedom of speech. The district court granted the City of Green Bay's motion for a directed verdict because Conner failed to show that her discharge was pursuant to a policy or custom of the City of Green Bay. Id. at 387. Conner then subsequently sued under Sec. 1983 her supervisor and an alderman for the City of Green Bay in both their individual and official capacities for deprivation of her first amendment rights. The defendants filed a motion for summary judgment based on the doctrine of res judicata, which the district court denied. On appeal, the Conner court held that because Conner was suing the defendants in their personal capacities they were not "in privity with the City of Green Bay. Therefore, Conner's earlier suit against the city [did] not preclude her from pursuing [this] action." Id. at 396.
 
 
 21
 The facts before us closely mirror those before our court in Conner. Just as in Conner, Gray is suing the appellees in both their official and individual capacities. Additionally, in Gray's prior suit against Dane County, our court affirmed the district court's dismissal of her Sec. 1983 action on the ground that she failed to show that her supervisors (the appellees in this suit) were acting pursuant to a policy or custom of Dane County. Gray, 854 F.2d at 184. Thus, to the extent that Gray is suing the appellees in their personal capacities, they are not in privity with Dane County. See Conner, 847 F.2d at 396; see also Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir.1987) (holding that police officers were not in privity with the city with respect to claims made against them in their individual capacities). Moreover, because individual-capacity suits require only that plaintiffs show that the government employees were acting under color of state law, and not that they were acting according to a policy or custom of the government entity, Kentucky, 473 U.S. at 165-66, 105 S.Ct. at 3105, our court's prior decision that Gray's supervisors were not acting according to a custom or policy of Dane County does not preclude her current suit against her supervisors in their individual capacities.
 
 B. Collateral Estoppel
 
 22
 The appellees also argue that the doctrine of collateral estoppel (issue preclusion) prevents Gray from maintaining this action. Under this doctrine, "once an issue is actually and necessarily decided by a court, that determination is conclusive in a subsequent suit on a different cause of action that involves a party to the earlier litigation." Schellong v. U.S. Immigration & Naturalization Serv., 805 F.2d 655, 658 (7th Cir.1986), cert. denied, 481 U.S. 1004, 107 S.Ct. 1624, 95 L.Ed.2d 199 (1987); see Ferrell v. Pierce, 785 F.2d 1372, 1384-85 (7th Cir.1986). Collateral estoppel will prevent the relitigation of an issue when four requirements are met: (1) the party against whom collateral estoppel is asserted must have been fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to an issue involved in the prior litigation; (3) the issue must have been actually litigated and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment. See Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir.1987); County of Cook v. Midcon Corp., 773 F.2d 892, 898 (7th Cir.1985).
 
 
 23
 The crux of the dispute between the parties is whether Gray's claims based on the first and fourteenth amendments were actually litigated and decided on the merits in her prior suit against Dane County. Gray notes that although the district court decided those issues against her in her prior suit, our court expressly declined to reach those issues on appeal. Thus, under these circumstances, she contends that collateral estoppel is inappropriate. We agree.
 
 
 24
 The policy underlying collateral estoppel is that a party is entitled to only one fair opportunity to litigate an issue. See Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n, 804 F.2d 390, 392 (7th Cir.1987); Bowen v. United States, 570 F.2d 1311, 1322 (7th Cir.1978). In furtherance of this policy, courts will not apply collateral estoppel when the party against whom the prior decision is invoked did not have a "full and fair opportunity to litigate" that issue in the prior case. Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); Teamsters Local 282 Pension Trust Fund v. Angelos, 815 F.2d 452, 456 n. 3 (7th Cir.1987); Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605 F.2d 990, 992 (7th Cir.1979), cert. denied, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). As our court has recognized on prior occasions, a "full and fair opportunity to litigate" includes the right to appeal an adverse decision. See Disher v. Information Resources, Inc., 873 F.2d 136, 139 (7th Cir.1989) (noting that unless a judgment is appealable, collateral estoppel is inappropriate because the party "was denied an opportunity to contest it fully in the previous litigation"); In re 949 Erie St., Racine, Wis., 824 F.2d 538, 541 (7th Cir.1987) (noting that collateral estoppel does not apply to nonappealable interlocutory orders); see also Standefer v. United States, 447 U.S. 10, 23, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980) (noting that contemporary principles of collateral estoppel militate against giving preclusive effect to an acquittal because the government does not have a right to appeal an acquittal in a criminal case); Block v. U.S. Int'l Trade Comm'n, 777 F.2d 1568, 1571-72 (Fed.Cir.1985) (ruling that collateral estoppel does not apply when "there has been no opportunity for appellate review").
 
 
 25
 In her prior action against Dane County, Gray tried to appeal the district court's ruling that the actions of which she complained did not violate her first or fourteenth amendment rights. Our court, however, affirmed the district court on other grounds and expressly declined to reach those issues. See Gray, 854 F.2d at 182 ("We uphold the district court's first ground for dismissing the complaint, making it unnecessary for us to consider whether Gray properly pleaded deprivations of the equal protection clause or the first amendment."). Therefore, for reasons beyond her control, Gray was not afforded a full and fair opportunity to litigate those issues. Accordingly, collateral estoppel does not apply to first and fourteenth amendment issues in the present action.
 
 III. Statute of Limitations
 
 26
 Gray argues that the district court erred in applying Wisconsin's three-year personal injury statute of limitations to her Sec. 1983 action. Instead, she contends that the district court should have applied Wisconsin's six-year personal rights statute. Moreover, Gray claims that even if the district court chose the correct statute of limitations, the district court erroneously applied that statute to her claims.
 
 
 27
 Although Congress created a federal action in Sec. 1983, it did not specify a federal statute of limitations for such actions. Anton v. Lehpamer, 787 F.2d 1141, 1142 (7th Cir.1986); Mulligan v. Hazard, 777 F.2d 340, 343 (6th Cir.1985), cert. denied, 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986). Thus, courts have traditionally borrowed the most analogous state statute of limitations. Anton, 787 F.2d at 1142; see Beard v. Robinson, 563 F.2d 331, 334 (7th Cir.1977), cert. denied, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978). This approach led to such inconsistent results in the federal courts, that the Supreme Court tried to give clearer guidance on which state statute of limitations to choose in Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In that case, the Court held that Sec. 1983 claims can best be characterized as personal injury actions. Id. at 280, 105 S.Ct. at 1949. Therefore, the Supreme Court directed federal courts to apply a state's personal injury statute of limitations to Sec. 1983 actions. See id. at 276-79, 105 S.Ct. at 1946-49.
 
 
 28
 In the case before us, Wilson does not settle this dispute because Wisconsin has two different statute of limitations for injuries to the person, and the parties disagree as to which one applies in Sec. 1983 actions. The appellees argue that the district court correctly applied Wisconsin's three-year personal injury statute of limitations. This statute covers all actions to recover damages "for injuries to the person" and "for death caused by the wrongful act, neglect or default of another." WIS.STAT.ANN. Sec. 893.54 (West 1983). Conversely, Gray contends that the district court should have applied Wisconsin's six-year personal rights statute of limitations. This statute covers all actions to recover damages "for an injury to the character or rights of another, not arising under contract ... except where a different period is expressly prescribed." Id. Sec. 893.53.
 
 
 29
 In Owens v. Okure, --- U.S. ----, 109 S.Ct. 573, 577, 102 L.Ed.2d 594 (1989), the Supreme Court, realizing that Wilson did not completely eliminate "the confusion over the appropriate limitations period for Sec. 1983 claims," once again revisited this issue. The Court noted that although many states have more than one statute of limitations which apply to personal injuries, every state has only one general or residual statute of limitations governing personal injury actions. Id., 109 S.Ct. at 578-80. Therefore, this general or residual personal injury statute of limitations would be readily ascertainable in every state and give greater predictability in applying limitation periods to Sec. 1983 actions. See id. at 580. Accordingly, the Supreme Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering Sec. 1983 claims should borrow the general or residual statute for personal injury actions." Id. at 582.
 
 
 30
 Owens mandates that for Sec. 1983 actions, we must choose the Wisconsin statute of limitations which is a general or residual statute for personal injury actions. Many factors support the conclusion that federal courts sitting in Wisconsin should apply Wisconsin's six-year personal rights statute of limitations to Sec. 1983 actions. First, we note that the Wisconsin Appellate Court interpreted the predecessor statute to the present personal rights statute of limitations as a general or residual statute. In Segall v. Hurwitz, 114 Wis.2d 471, 339 N.W.2d 333 (Wis.Ct.App.1983), the plaintiff sued the defendant in part for interference with contractual relations. The Segall court noted that no specific statute of limitations applies in Wisconsin for injury from contractual interference. The court then reasoned that the applicable statute of limitations was Sec. 893.19(5) (the predecessor statute to the current Sec. 893.53), which applied to actions to recover for an injury to the rights of another. See id., 339 N.W.2d at 341. Thus, the Segall court interpreted Sec. 893.19(5) as a residual or general personal injury statute of limitations. Because the language of Sec. 893.19(5) is virtually identical to the language of its successor statute,[2] Wisconsin courts will probably continue to interpret the present six-year personal rights statute of limitations as a general or residual statute.[3]
 
 
 31
 Second, the language of the personal rights statute of limitations is consistent with that of a residual or general statute of limitations. This statute applies to an action for injury to the "rights of another." Thus, its language is broader than Wisconsin's other more specific statutes of limitations covering personal injuries. See, e.g., WIS.STAT.ANN. Sec. 893.54 (West 1983) (three-year limitations period on actions for personal injury and wrongful death); id. Sec. 893.55 (either a one- or three-year limitations period on medical malpractice actions); id. Sec. 893.57 (two-year limitations period on actions for intentional torts). The broad language of the personal rights statute of limitations is also consistent with the purpose of Sec. 1983, which is to provide a remedy for a "wide spectrum of claims" that include more than just bodily injury. Owens, 109 S.Ct. at 581. Indeed, "[h]ad the 42d Congress expressly focused on the issue decided today, we believe it would have characterized Sec. 1983 as conferring a general remedy for injuries to personal rights." Wilson, 471 U.S. at 278, 105 S.Ct. at 1948 (emphasis added).
 
 
 32
 Finally, federal district courts in Wisconsin that have confronted this issue after the Supreme Court's opinion in Wilson have also applied the personal rights statute of limitations to Sec. 1983 actions. For example, in Saldivar v. Cadena, 622 F.Supp. 949 (W.D.Wis.1985), the plaintiff sued the defendant in part under Sec. 1983 for racial and sexual harassment. The defendants moved to dismiss the complaint on the ground that it was barred by Wisconsin's three-year statute of limitations for personal injury. The Saldivar court reasoned that under Wilson, courts should choose a statute of limitations governing personal rights over bodily injury. Id. at 955. Accordingly, the Saldivar court held that Wisconsin's six-year statute of limitations for personal rights applied to Sec. 1983 actions. Id. This determination was reaffirmed in two subsequent decisions. See Jordi v. Sauk Prairie School Bd., 651 F.Supp. 1566, 1573 (W.D.Wis.1987); Thompson v. County of Rock, 648 F.Supp. 861, 866 (W.D.Wis.1986).
 
 
 33
 The appellees argue that we should apply Wisconsin's three-year personal injury statute of limitations to Sec. 1983 claims because the Wisconsin Appellate Court had previously done so in Hanson v. Madison Service Corp., 125 Wis.2d 138, 370 N.W.2d 586, 588 (Wis.Ct.App.1985). The appellees reliance on Hanson is misplaced. The characterization of a Sec. 1983 action for statute of limitations purposes is an issue of federal law. See Wilson, 471 U.S. at 268-69, 105 S.Ct. at 1943. Thus, the decision by the Wisconsin Appellate Court is not binding on our court. Additionally, the Hanson court did not have the benefit of the Supreme Court's recent decision in Owens that further clarified which state statute of limitations should apply to Sec. 1983 actions. Therefore, we decline to follow Hanson, and we hold that Wisconsin's six-year personal rights statute of limitations applies to Sec. 1983 actions.[4] Because Gray filed her complaint on April 18, 1988, she can maintain this Sec. 1983 action based on any claims that occurred on or after April 18, 1982.[5]
 
 IV. Timely Service of Process
 
 34
 The appellees also contend that Gray's claims are barred because she did not timely serve them with the complaint under Wisconsin law. They claim that under Wisconsin law, an action commences upon the filing of a complaint only if the plaintiff serves the defendants within sixty days of the filing of the complaint. See WIS.STAT.ANN. Sec. 893.02 (West 1983).[6] In this case, they note that although Gray filed her complaint on April 18, 1988, she did not serve them with the complaint until August 12, 1988. Thus, the appellees argue that her action did not commence on April 18, 1988, because she did not serve them with the complaint within the sixty-day period. We reject this argument.
 
 
 35
 A careful review of the record shows that the appellees did not present this argument to the district court. Their failure "to raise this issue in the district court results in a waiver of it on appeal." United States v. Gaddis, 877 F.2d 605, 613 (7th Cir.1989); see United States v. Muskovsky, 863 F.2d 1319, 1323 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989).
 
 
 36
 Furthermore, even if we were to reach the merits of this issue, we would still reject the appellees' argument. It is true that when federal courts borrow a state's statute of limitations for a Sec. 1983 action, they also borrow the applicable tolling provisions. See Wilson, 471 U.S. at 269, 105 S.Ct. at 1943; Cange v. Stotler & Co., 826 F.2d 581, 586 (7th Cir.1987). Federal courts, however, "borrow only what is necessary to fill the gap left by Congress," West v. Conrail, 481 U.S. 35, 39 n. 6, 107 S.Ct. 1538, 1542 n. 6, 95 L.Ed.2d 32 (1987); see Lewellen v. Morley, 875 F.2d 118, 121 (7th Cir.1989), and they will not borrow any state tolling rule that is inconsistent with federal law, see Board of Regents v. Tomanio, 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980).
 
 
 37
 Rule 3 of the Federal Rules of Civil Procedure provides that a "civil action is commenced by filing a complaint with the court." Rule 4(j) of the Federal Rules of Civil Procedure then gives the plaintiff 120 days to serve the defendant, unless good cause is shown, or else the action is dismissed. As our court has already held, "[i]n light of Rules 3 and 4(j) there is no deficiency of federal law on questions concerning the relation among filing, service, and the period of limitations." Lewellen, 875 F.2d at 121. Since there is no deficiency or gap in federal law, there is no reason for us to resort to Wisconsin's tolling rule, which requires service on the defendants within 60 days for an action to be commenced upon filing. See Lewellen, 875 F.2d at 120-21; Del Raine v. Carlson, 826 F.2d 698, 706 (7th Cir.1987). Therefore, we find that Wisconsin's tolling rule does not apply to bar Gray's action, and because she served the defendants 116 days after filing her complaint, which is within the 120 day period set forth in Rule 4(j), her action commenced on the day she filed the complaint in the district court.
 
 V. First Amendment Rights
 
 38
 Gray contends that the appellees deprived her of her first amendment rights to freedom of speech and to petition the government by retaliating against her for complaining about and filing grievances over sexual harassment and sex discrimination within the Dane County Sheriff Department. Thus, she claims that since these issues are matters of public concern, she has properly alleged a deprivation of her first amendment rights. Because of the myriad of different factual situations in which statements are made and grievances filed, there are no general standards by which we can judge all first amendment deprivation cases. See Knapp v. Whitaker, 757 F.2d 827, 840 (7th Cir.), cert. denied, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985). Instead, we can enunciate only the general principles which guide our decision and then apply those principles to the particular facts of each case.[7]
 
 A. Freedom of Speech
 
 39
 An individual does not lose his first amendment right to freedom of speech because he is employed by the government. Connick v. Myers, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983). A balance, however, must be made between the rights of a government employee to comment on matters of public concern and the right of the government, as an employer, to promote the efficiency of its public services. Pickering v. Board of Educ., 391 U.S. 563, 566, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); Berg v. Hunter, 854 F.2d 238, 241 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989). Accordingly, in deciding whether the government has wrongfully deprived an employee of his right to freedom of speech, our initial inquiry is whether the employee was speaking on matters of public concern. Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987); Vukadinovich v. Bartels, 853 F.2d 1387, 1390 (7th Cir.1988). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. at 1690; see Hesse v. Board of Educ., 848 F.2d 748, 751 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989).
 
 
 40
 In her complaint, Gray alleges three separate instances in which she engaged in speech: (1) when she complained to two of her supervisors that another supervisor had made submission to his sexual advances a term and condition of her employment; (2) when she gave an interview with a newspaper reporter; and (3) when she engaged in a private conversation with a coworker. Gray argues that because she engaged in her right to free speech, the appellees retaliated against her. Therefore, Gray claims that she has properly alleged a Sec. 1983 action for deprivation of her right to freedom of speech.
 
 
 41
 In analyzing this issue, we must look at each act of speech separately to see whether it touched upon a matter of public concern. See Connick, 461 U.S. at 149, 103 S.Ct. at 1691 (finding that one question on a questionnaire touched upon a matter of public concern although the other questions did not); Hesse, 848 F.2d at 751 (reviewing all the plaintiff's expressions and finding that one of them relates to a matter of public concern). Gray's complaint to two of her supervisors about sexual harassment clearly touched upon matters of private concern. Although sexual harassment may inherently be a matter of public concern, see Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir.1987), our court has repeatedly held that we must look to the point of the speech to see if the plaintiff addressed a matter of public or private concern, see Vukadinovich, 853 F.2d at 1390; Linhart v. Glatfelter, 771 F.2d 1004, 1010 (7th Cir.1985). In this regard, Gray complained to her supervisors in order to have the sexual harassment stopped. Her communication related solely to the resolution of a personal problem. See Callaway, 832 F.2d at 417. Therefore, this claim did not state an action under Sec. 1983.
 
 
 42
 Sometime between February and August 1980, Gray gave an interview with a newspaper reporter which resulted in a published article that discussed Gray's allegations of sexual harassment within the Dane County Sheriff Department. Whether this speech is a matter of public or private concern is uncertain. The mere fact that a newspaper contacted her and published her allegations does not necessarily mean that this speech involved a matter of public concern. See Vukadinovich, 853 F.2d at 1391. Since the article reported on the grievances Gray had filed, it is quite possible that Gray was trying only to comment on her personal dispute with her supervisors. On the other hand, she may have been trying to notify the citizens of Dane County that there is a serious problem within the Sheriff Department. Since we must construe the complaint in the light most favorable to Gray, we assume that she was trying to comment on more than just her personal dispute. Thus, this speech does touch upon a matter of public concern, and the district court erred in dismissing this claim.[8]
 
 
 43
 Finally, Gray alleges that two of the appellees interrogated her concerning a private conversation she had with a coworker. Although it may have been a private conversation, the private nature of a statement does not "vitiate the status of the statement as addressing a matter of public concern." Rankin, 483 U.S. at 387 n. 11, 107 S.Ct. at 2898 n. 11. In her complaint, however, Gray makes no allegations concerning the content of that conversation. We have no way of knowing whether the conversation touched upon a matter of public concern. Therefore, because Gray failed to make sufficient factual allegations regarding this incident, the district court properly dismissed this claim. See Musso v. Suriano, 586 F.2d 59, 62 (7th Cir.1978) (affirming the dismissal of three different Sec. 1983 actions because of insufficient allegations in the complaints), cert. denied, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979).B. The Right To Petition the Government
 
 
 44
 The first amendment guarantees every citizen's right "to petition the Government for a redress of grievances." U.S. CONST. amend I. The Supreme Court has stated that this right is "cut from the same cloth as the other guarantees of [the first amendment], and is an assurance of a particular freedom of expression." McDonald v. Smith, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985). As an assurance of a particular freedom of expression, the right to petition the government is similar to the right to free speech. Accordingly, courts "analyze an alleged violation of the petition clause in the same manner as any other alleged violation of the right to engage in free speech." Phares v. Gustafsson, 856 F.2d 1003, 1009 (7th Cir.1988); see Belk v. Town of Minocqua, 858 F.2d 1258, 1262 & n. 5 (7th Cir.1988); Day v. South Park Indep. School Dist., 768 F.2d 696, 701 (5th Cir.1985), cert. denied, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). Therefore, in deciding whether a public employer has wrongfully deprived an employee of his right to petition the government, our inquiry must begin with whether the petition touched upon a matter of public concern by looking at the content, form, and context of the petition. See Belk, 858 F.2d at 1262; Phares, 856 F.2d at 1009.
 
 
 45
 In her complaint, Gray alleges six separate incidents in which she filed complaints and grievances with her union, Dane County, and the State of Wisconsin. She claims that the petition clause protected all these filings and that the appellees unlawfully retaliated against her due to these filings. Moreover, Gray contends that complaints about sex discrimination are never a matter of private concern, and therefore, she has properly alleged a deprivation of her right to petition the government under Sec. 1983.[9]
 
 
 46
 Three of Gray's petitions undoubtedly touched upon matters of private, not public, concern. The union grievance she filed in July 1979 concerned her desire to receive a higher rate of pay commensurate with the rate which male employees had received when they performed the same duties. She does not allege that she filed this grievance on behalf of all communications operators. Moreover, the fact that two other female communications operators filed similar grievances suggests that each filed on her own behalf. Additionally, Gray's grievance filed with Dane County in April 1985 concerned only her personal working conditions. Gray was dissatisfied with her job duties and work schedule and sought to have them changed. Finally, in her complaint filed with the State of Wisconsin in June 1985, Gray alleged only that "her employer had unlawfully discriminated against her in the conditions of her employment." Plaintiff's Complaint, Rec. 2, p 40, at 16 (emphasis added). Clearly, the form and content of this complaint, as well as the other two, "indicate that these were purely matters of personal interest." Phares, 856 F.2d at 1009. Thus, the district court properly dismissed these claims.
 
 
 47
 Gray filed two additional complaints in 1980, one with Dane County and the other one with the State of Wisconsin. In the first complaint filed in late February, she alleged that she was subject to unlawful sex discrimination and sexual harassment. She also alleged unlawful disparate treatment in regard to her working conditions, such as sick leave and work assignments. She filed the complaint on behalf of herself and all other female communications operators and alleged that all female communications operators were being treated unlawfully because of their sex. Gray then filed a separate complaint in August with the State of Wisconsin, which merely repeated the allegations of her earlier complaint filed with Dane County.
 
 
 48
 Although the fact that Gray filed these complaints on behalf of all female communications operators is an indication of public, rather than private, concern, it certainly is not dispositive of this issue. Rather, we must consider whether the content, context, and form of these complaints, as revealed by the record as a whole, indicate that they were matters of public concern. See Vukadinovich, 853 F.2d at 1390; Hesse, 848 F.2d at 751. Both the content and form of the complaints suggest that her primary concern was resolving a personal dispute that she was having with her employer. Her complaints apparently contained detailed allegations of discrimination and disparate treatment in regard to herself, but only vague and sweeping generalities concerning the unlawful treatment of the female communications operators as a group. Moreover, the timing and context of her complaints also suggest that they touched only upon matters of personal concern. In February 1980, before she filed her complaint with Dane County, Gray had complained to two of her supervisors about sexual harassment on the job and had received a thirty-day suspension without pay for insubordination. Thus, the timing of these complaints suggests that they were inextricably tied to her personal disputes with her supervisors, see Berg, 854 F.2d at 242 ("The timing and content of these charges [including sexual harassment] are tied inexorably to matters of only personal interest to Berg."), and a resolution of those personal disputes appears to be the reason why Gray filed the complaints, see Hesse, 848 F.2d at 752 (stating that courts must look to the point of the speech). As our court has already noted, personal disputes "cloaked in the garb" of institutional grievances "are not thereby made matters of public concern." Berg, 854 F.2d at 242.
 
 
 49
 The disposition of her complaint filed with the State of Wisconsin also reinforces our conclusion that her complaints touched only upon matters of private concern. Gray alleges that
 
 
 50
 [a state] investigator issued an initial determination finding probable cause to believe [Gray ] had been discriminated against because of her sex and retaliated against because she had complained of sex discrimination by her employer. The investigator found probable cause to believe that [Gray ] had been disciplined and supervised in a manner which discriminated against her on the basis of her sex and inretaliation [sic] for her filing a complaint of sex discrimination.
 
 
 51
 Plaintiff's Complaint, Rec. 2, p 20, at 9 (emphasis added).
 
 
 52
 The investigator apparently made findings about Gray only and not about all female communications operators. Thus, her complaint filed with the State of Wisconsin, which merely realleged the allegations contained in her earlier complaint filed with Dane County, primarily concerned Gray and not the other female communications operators. Accordingly, the district court properly dismissed these claims because they touched only upon matters of personal concern.
 
 
 53
 Finally, in December 1983, Gray filed a union grievance, on behalf of herself and all other jail booking clerks (all of whom were female), alleging that they were being paid less than male employees who had previously performed the same duties. In her grievance, Gray sought to have the pay of all jail booking clerks reclassified at a higher level. This grievance was eventually settled, and all jail booking clerks were reclassified at a higher rate of pay.
 
 
 54
 This grievance definitely touched upon a matter of public concern. Unlike her other grievances, Gray was not trying to resolve a personal dispute. Rather, this was a criticism directed at the Sheriff Department in general, which makes it more of a matter of public concern. See Hesse, 848 F.2d at 752; Egger v. Phillips, 710 F.2d 292, 318 (7th Cir.), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The issue she raised in her grievance affects not only herself, but all jail booking clerks because it touched upon the unequal pay rates between female and male employees. Additionally, it focused attention on an issue of concern to the citizens of Dane County since the compensation level affects the ability of Dane County to attract and retain qualified jail booking clerks. See McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.1983). On prior occasions, courts have recognized that grievances submitted on behalf of other individuals often touch upon matters of public concern. See Knapp, 757 F.2d at 840-41; McKinley, 705 F.2d at 1114-15. Therefore, the district court erred in dismissing this claim.
 
 VI. Equal Protection and Due Process Rights
 
 55
 Gray contends that the appellees deprived her of her equal protection and due process rights guaranteed by the fourteenth amendment. The appellees, however, argue that her allegations establish only a claim for Title VII relief, which was foreclosed by her earlier suit against Dane County. See Gray, 854 F.2d at 185 (affirming the district court's dismissal with prejudice of Gray's Title VII claim). The district dismissed these claims on the ground that Gray failed to state claims for relief under Sec. 1983. We agree.
 
 
 56
 In order to maintain her equal protection claim, Gray must show that the appellees intentionally discriminated against her because of her membership in a particular class. See Huebschen v. Department of Health & Social Servs., 716 F.2d 1167, 1171 (7th Cir.1983); Trigg v. Fort Wayne Community Schools, 766 F.2d 299, 300 (7th Cir.1985). Gray's complaint makes numerous allegations to the effect that the appellees harassed and retaliated against her because she openly complained about and filed grievances over sexual harassment and sex discrimination within the Dane County Sheriff Department. These allegations, however, do not show that Gray has been discriminated against because she is a member of a particular class. The appellees allegedly retaliated against her because of her conduct, not because she is a woman.
 
 
 57
 Gray's right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause. See 42 U.S.C. Sec. 2000e-3. Section 1983 provides a remedy for deprivation of constitutional rights. It supplies no remedy for violations of rights created by Title VII. See Alexander v. Chicago Park Dist., 773 F.2d 850, 855 (7th Cir.1985), cert. denied, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir.1984). Only when the underlying facts support both a Title VII and a constitutional deprivation claim can a plaintiff maintain an action under Sec. 1983 and bypass the procedural requirements of Title VII. See Ratliff v. City of Milwaukee, 795 F.2d 612, 624 (7th Cir.1986); Trigg, 766 F.2d at 302.
 
 
 58
 Gray, however, contends that she has alleged an equal protection clause violation. She argues that the appellees discriminated against her because she is a member of a class of employees who stand up for their constitutional rights. This argument is without merit. First, we know of no court which has recognized this alleged class of individuals for purposes of the equal protection clause. Second, Gray's complaint alleges that the appellees retaliated against her for protesting alleged incidents of sexual harassment and sex discrimination, not because she tried to vindicate constitutional rights. Therefore, because Gray failed to establish a claim under the equal protection clause, the district court properly dismissed this claim.
 
 
 59
 Gray also argues that she was deprived of her due process rights. She presents no specific arguments, however, to support this claim. She fails to allege a property or liberty interest of which the appellees deprived her. Therefore, she has not stated a claim under the due process clause. See Ratliff, 795 F.2d at 624 ("There was no error in dismissing plaintiff's due process claim because she did not have a protectable property interest ... nor did the defendants invade any protectable liberty interest.").
 
 VII. Conclusion
 
 60
 In sum, we REVERSE the district court's dismissal of Gray's free speech claim based on her interview with a newspaper reporter. We also REVERSE its determination that she failed to state a claim under the petition clause based on her filing of a grievance on behalf of all jail booking clerks. Otherwise, we AFFIRM the judgment of the district court and REMAND this case for further proceedings.
 
 
 
 [1]
 42 U.S.C. Sec. 1983 provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [2]
 The language of Sec. 893.19(5) provided in relevant part: "An action to recover damages ... for an injury to the character or rights of another, not arising on contract, except in case where a different period is expressly prescribed." WIS.STAT.ANN. app. Sec. 893, at 328 (West 1983)
 
 
 [3]
 Our research has uncovered only three Wisconsin cases which even mention the personal rights statute of limitations. See Felder v. Casey, 441 N.W.2d 725, 729 (Wis.1989); Esser Distrib. Co. v. Steidl, 145 Wis.2d 160, 426 N.W.2d 62 (Wis.Ct.App.1988); Segall, 114 Wis.2d at 471, 339 N.W.2d at 333. Unfortunately, none of these cases discuss its scope. In Felder, the Wisconsin Supreme Court expressly declined to resolve whether Wisconsin's three-year personal injury statute of limitations or its six-year personal rights statute of limitations applies to Sec. 1983 actions. Felder, 441 N.W.2d at 729
 
 
 [4]
 Because we hold that Wisconsin's six-year personal rights statute of limitations applies to Sec. 1983 actions, it is unnecessary for us to reach the issue of whether to apply this decision retroactively. Under prior law, federal courts already applied a six-year statute of limitations to Sec. 1983 actions in Wisconsin. See Steinle v. Warren, 765 F.2d 95, 101 (7th Cir.1985); Reese v. Milwaukee County Sheriff Dept., 505 F.Supp. 88, 89 (E.D.Wis.1980); Kuecey v. Powers, 79 F.R.D. 151, 152 (W.D.Wis.1978). Therefore, our decision does not change the length of the limitations period for Sec. 1983 actions in Wisconsin
 
 
 [5]
 The appellees argue that some of Gray's claims are barred by a settlement agreement that the parties entered into on September 29, 1981, with respect to Gray's discrimination complaint filed with the State of Wisconsin. However, since the alleged discriminatory incidents forming the basis of Gray's complaint must have taken place before April 18, 1982, these claims are barred by the statute of limitations. Therefore, we need not decide whether they would be barred by the settlement agreement
 
 
 [6]
 Section 893.02 provides:
 An action is commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming the defendant and the complaint are filed with the court, but no action shall be deemed commenced as to any defendant upon whom service of authenticated copies of the summons and complaint has not been made within 60 days after filing.
 WIS.STAT.ANN. Sec. 893.02 (West 1983).
 
 
 [7]
 Since Gray filed her complaint on April 18, 1988, the six-year statute of limitation bars any claims based on actions taken by the appellees before April 18, 1982. Gray's complaint, however, contains factual allegations dating back to 1979 concerning acts of speech and filings of grievances that she made. Gray apparently contends that the appellees retaliated against her after April 18, 1982, for her earlier complaints about sexual harassment and filings of grievances. Therefore, she argues that she can still state a claim under Sec. 1983 for deprivation of her rights based on her pre-April 18, 1982, verbal complaints and filings of grievances
 Since we are obligated to construe all facts in the light most favorable to Gray, we will consider all her alleged acts of speech and filings of grievances. However, Gray cannot continue to claim that each of the appellees' allegedly unlawful acts were committed in retaliation for all her instances of speech and filings of grievances. If we were to accept such a sweeping proposition, virtually no claims would ever be barred by a statute of limitations. Therefore, for those claims that we remand, the district court can judge for itself, based on further evidence, whether the appellees committed any unlawful acts during the limitations period because of Gray's activities that occurred before April 18, 1982.
 
 
 [8]
 If on remand the district court finds, based on further evidence regarding the content, form, and context of the speech, that Gray was trying only to comment on her own personal dispute, then this claim should be dismissed. Additionally, Gray must also show that the appellees committed an unlawful act after April 18, 1982, in order to retaliate against her because of this newspaper article, or else this claim is barred by the statute of limitations
 
 
 [9]
 The filing of grievances, which form the basis of Gray's petition-clause claims, could also be protected by her right to freedom of speech. See Renfroe v. Kirkpatrick, 722 F.2d 714, 715 (11th Cir.) (referring to the filing of a grievance as speech and applying a speech analysis), cert. denied, 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984). However, since the analysis for an alleged petition-clause deprivation is identical to that for free speech, our results would necessarily have to be the same