929 F.2d 703
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jean J. KHOURI, Plaintiff/Appellant,
v.
FRANK CUNEO HOSPITAL of the Columbus-Cuneo-Cabrini Medical
Center, Defendant/Appellee.
 No. 90-1680.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 19, 1991.*
Decided April 2, 1991.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 88 C 4553, Paul E. Plunkett, Judge.
 N.D.Ill.
 AFFIRMED.
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Jean J. Khouri appeals pro se from the district court's grant of summary judgment to defendant. In her complaint, Khouri alleged that the defendant-employer discriminated against her on the basis of her race and laid her off in retaliation for filing a complaint with the EEOC.[1] After reviewing the decision of the district court, the briefs, and the record, we have determined that the district court properly identified and resolved the issues now before us on appeal. Therefore, for the reasons stated in the attached memorandum opinion, the decision of the district court is AFFIRMED.
 
 ATTACHMENT
 
 2
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 3
 JEAN JOYCE KHOURI, Plaintiff,
 
 
 4
 v.
 
 
 5
 FRANK CUNEO HOSPITAL of the COLUMBUS-CUNEO-CABRINI MEDICAL
 
 
 6
 CENTER, Defendant.
 
 No. 88 C 4553
 MEMORANDUM OPINION AND ORDER
 
 7
 PAUL E. PLUNKETT, District Judge.
 
 
 8
 Defendant seeks summary judgment on plaintiff's complaint for discrimination in violation of Title VII, 42 U.S.C. Sec. 2000(e) et seq. Plaintiff has alleged that defendant discriminated against her on the basis of her race, black, and in retaliation for her filing of a complaint with the EEOC in April, 1985, see Khouri Affidavit, p 5, when it laid her off in December, 1986. Defendant argues that it is entitled to summary judgment because plaintiff was laid off without regard to her race or her EEOC charge, as a result of severe cutbacks in hospital staffing, which ultimately resulted in the closing of the hospital in June, 1988. We agree with defendant that it is entitled to summary judgment.
 
 Facts
 
 9
 Plaintiff, Jean Joyce Khouri ("Khouri"), was employed by defendant Frank Cuneo Hospital ("Cuneo") from 1970 until December 12, 1986. Cuneo is part of a three hospital medical center comprised of Cuneo, Cabrini Hospital and Columbus Hospital. For a while plaintiff worked in a clerical-type position, keeping records, and at some point she became an EKG technician, with some continuing record-keeping duties. In October, 1985 and April, 1986, according to defendant, plaintiff filed grievances with the EEOC. Plaintiff states in her affidavit that she filed a grievance with the EEOC in April, 1985, which she voluntarily abandoned after conciliation with defendant concerning the grievance. Khouri Affidavit, p 8. The complaint, however, alleges that she filed a grievance with the EEOC on April 11, 1986. Complaint, p 6. Plaintiff argues that she was terminated from her position in December, 1986 in retaliation for filing the grievance with the EEOC and because she is black.
 
 
 10
 Defendant presents the following evidence in support of its motion for summary judgment. Barbara Runyen, defendant's former Chief Operating Officer, testified that she was the Chief Operating Officer from September, 1985 until the hospital closed in June, 1988. Runyen Dep. at 6-9. She was involved in termination decisions and testified that the hospital was losing money in 1986 and needed to lay off workers. Id. at 11, 13. In deciding who to terminate, Runyen testified that they examined the patient volumes in the hospital departments and consolidated some departments and positions and eliminated others based upon this information. Id. at 21. In October, 1987, the hospital closed all medical surgical services. Id. at 21-22. Runyen was aware of the actual people who were going to be laid off after the decisions were made, but the determinations of who to lay off were based upon how many people were needed to do the work in the department being down-sized. Id. at 24-26. After the decision to eliminate or consolidate positions was made, the Human Resources department would then inform her of who the people actually being terminated as a result were, and she would have available to her information on their race and seniority. Id. at 26-27.
 
 
 11
 With respect to the termination of Khouri, Runyen testified that she was unaware that plaintiff had filed an EEOC charge in April, 1986, even at the time of Runyen's deposition in January, 1989. Id. at 30. She testified that doing an EKG was a fairly low level position, and that positions were cut based on the scope of responsibilities, keeping those who could do the most things. After that, they looked at seniority. Id. at 39. She further testified that neither race nor the filing of EEOC charges played any role in her determination to lay off Khouri. Id. at 43.
 
 
 12
 Diane Ferrara worked in defendant's Human Resources department from 1975 until September 23, 1988, and became director of the department in 1985. Ferrara dep. at 8-10. Cuneo Hospital began implementing layoffs in 1981, as an ongoing process. Id. at 12-13, 15, 44. Her role was to advise individuals being laid off of their benefits, including unemployment and recall rights, and to conduct exit interviews with them. She testified that the department heads were responsible for making sure the department could run without these individuals without sacrificing any quality of care to the patients. Id. at 16. Decisions were made not to lay off particular persons but instead to eliminate particular positions. A list was compiled by the Chief Operating Officer and her staff stating the positions eliminated. Human Resources then matched this list to the actual employees and compiled a list of who was to be laid off. Id. at 21-28.
 
 
 13
 Ferrara testified that, within a position, the least senior person would be the first laid off. Id. at 29. If an opening occurred in the position within six months of the lay off, defendant's policy was to recall the person laid off to the position. However, if a position was consolidated, the person would be laid off unless he had the skills to perform the newly created position. Id. at 31, 44-45.
 
 
 14
 Khouri was the only person at Cuneo who held the position of EKG technician for the last few years of her employment. This was her only known skill to defendant other than medical record clerk. Id. at 58. The position of EKG technician was not consolidated or replaced, nor was it ever reinstituted after Khouri was laid off. No new employee ever replaced Ms. Khouri. Id. at 60. Rather, the medical technologist and medical technician, who were graduates of approved medical technology programs or bachelor of science or associates degree programs, and who performed and analyzed blood and urine and other body fluid samples, also performed EKG's, as they had been doing while Khouri was an employee. They simply did more of them when she left, absorbing her duties. Id. at 46-47, 60. To Ferrara's knowledge, Khouri did not have a bachelor's degree, although she testified that Khouri told her she had one from a school in England. Ferrara asked Khouri for a copy of it, but Khouri never produced any documents showing she had additional education or skills. Id. at 55-56. Ferrara testified that Khouri was not cross trained to draw blood (technically called performing phlebotomy). Id. at 66.
 
 
 15
 After Khouri's termination, a new position of laboratory assistant was created. A new employee, Lena Armstrong, a black woman, was hired. Her duties were to go to nursing homes and draw blood and bring the specimens to Cuneo Hospital laboratory for examination. She was also to perform EKG's. Id. at 61-62.
 
 
 16
 Ferrara testified that she was aware of Khouri's EEOC charges, and that, to her knowledge, they were never mentioned in any discussions concerning position elimination and were not a factor in Khouri's layoff and termination. Id. at 33, 59-60.
 
 
 17
 Plaintiff has responded with her own affidavit and a few exhibits. She states that she was never afforded a lay off interview by defendant and was never notified of subsequent job openings during the six-month lay off recall period. Khouri aff. p 2. Plaintiff states that in March, 1987 she heard about an opening for an EKG technician with some phlebotomy training and contacted the hospital. She states she told her former supervisor, Rita Kraus, that she was trained in phlebotomy. Kraus had her contact personnel, which never responded to her after stating they would check her file. Id. p 3.
 
 
 18
 Plaintiff further contends that there were no drastic staff reductions until October 1987. She supports this claim with EEOC forms submitted in 1985 and on 7/29/86. Since both of these forms concern periods prior to her lay off and do not cover the relevant period, we find them of little probative value. They do not support her claim that drastic staff reductions did not begin at Cuneo until October, 1987.
 
 
 19
 Plaintiff further testified that that she believes she was terminated because she filed a grievance with the EEOC. She supports this claim with reference to an exhibit which she alleges shows that the department was shorthanded after her termination. However, all the exhibit shows is that a request was made to hire a laboratory assistant on 2/23/87, whose duties would be phlebotomy, delivering reports, performing EKG's, and picking up specimens. See Khouri aff. p 5; Exhibits 3 of supplementary exhibits. Khouri further testifies that she was cross-trained for treadmill test and cardiology report transcribing, which are not functions of an EKG technician. Khouri Aff. p 6.
 
 
 20
 Khouri also states that she was prevented by her supervisor, Norma Rosenberg, from attending a cardiology class so she could advance herself. She requested specific days off for a twenty or a forty week period to attend class, both of which requests were denied. Khouri aff. p 7. She also states she was deprived of training for the Echo-Cardiogram Machine, and that these deprivations resulted in her EEOC charge of April, 1985. She states that the charge was dropped when the Vice President of Human Resources, Mr. Gibson, promised she would receive the next training on the Echo-Cardiogram machine and would promote her to cardiology technician after the training. Khouri aff. p 8.
 
 
 21
 Khouri states that if she had not been prevented from attending the cardiology class or deprived of the Echo-Cardiogram training, she would have been performing and certified as a cardiology technician prior to her termination, and there were other cardiology technicians with less seniority than she had, so she would not have been laid off. Khouri aff. p 9. This appears to us to be speculation, not evidence. Finally, she states that a bachelor's degree was not required for the position of cardiology technician, and that two cardiology technicians employed by the three affiliated hospital (defendant, Columbus, and Cabrini) did not have bachelor's degrees. Khouri aff. p 10. Defendant seeks to strike this paragraph (as well as several others) as based upon hearsay, without foundation, and because there is no statement or testimony indicating that anything contained in paragraph 10 is based upon any personal knowledge of plaintiff. We agree that plaintiff has presented insufficient support for her conclusion that a bachelor's degree was not required for the position of cardiology technician and strike this paragraph of her affidavit since it is without foundation or basis other than hearsay.
 
 
 22
 In summary, the evidence shows that Khouri filed two grievances with the EEOC prior to the one on which this law suit is based. It further shows that the defendant's department of Human Resources was aware of these grievances. This department, however, did not make the decision to terminate plaintiff. Rather, without knowing who held the position of EKG technician, the Chief Operating Officer, in consultation with her staff, including the department heads, determined which positions the hospital could do without and continue to provide the necessary patient services. She then cut these positions as part of continuing efforts to cut costs, which resulted first in large numbers of layoffs and department closings and ultimately in the cessation of all operations. The position of EKG technician was cut in late 1986 because it was a low level position involving skills and duties that others on the hospital staff were capable of performing. The position was never reinstated. Subsequently, a position of lab assistant, involving an ability to perform phlebotomy and EKG's, was created, and it was filled by a black woman. Plaintiff was not informed by the hospital of this opening.
 
 Discussion
 
 23
 For defendant to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e. "whether a proper jury question was presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party bears "the burden of proof at trial on a dispositive issue, [however] ... the nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), quoting Fed.R.Civ.P. 56(e). We hold that Khouri has not satisfied this burden.
 
 
 24
 According to the Seventh Circuit, the analytical framework for a Title VII case is well established. The plaintiff must present a prima facie case of discrimination. A discharged plaintiff can ordinarily establish a prima facie case by showing that she was a member of a protected class; that she was performing the duties of her position satisfactorily; she was discharged; and her employer sought a replacement for her. Jones v. Jones Bros. Const. Corp., 879 F.2d 295, 299 (7th Cir.1989). "These elements may be adjusted to fit differing factual situations. For example, in a reduction-in-force case, the plaintiff may establish the fourth element by showing that others not in the protected class were treated more favorably." Id. at 299. Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for its action. If the defendant meets its burden, the plaintiff must prove that the proffered reasons for the dismissal were a pretext for discrimination. Plaintiff may do this by showing that a discriminatory reason more likely motivated the employer or by showing that the proffered reason is unworthy of credence, either because it has no basis in fact, it did not actually motivate the employer's decision, or it was insufficient to motivate the discharge. Id. at 299.
 
 
 25
 Here, plaintiff is a member of a protected racial group, and she was discharged. It further appears that there is no dispute that she was qualified for her job as an EKG technician. However, plaintiff has not shown that non-blacks were treated more favorably than she was, nor has she shown that she was replaced. No other EKG technician was ever hired. A black woman was hired several months later as a laboratory assistant, whose primary responsibility was performing phlebotomy, which was not one of plaintiff's job functions. Defendant's lay off recall policy provided that employees' recall rights were only to positions in the job classification held at the time of lay off. Defendant's Reply Brief Exhibit C, Statement of Policy, p 9(a). Plaintiff has presented no evidence that the position of laboratory assistant was in the same job classification as her position as EKG technician. Thus, plaintiff has failed to show that she was replaced, nor has she shown that white employees were treated differently. While plaintiff does claim that others were treated differently from her because they were given the position of cardiology technician and they did not have bachelor's degrees, she nowhere presents evidence of the race of these individuals. Therefore, plaintiff has failed to satisfy her burden of presenting a prima facie case of racial discrimination.
 
 
 26
 Further, even if plaintiff has presented a prima facie case, defendant has clearly presented a legitimate non-discriminatory reason for her termination. Defendant has presented undisputed evidence of staff reductions in 1986, 1987 and 1988, culminating with the closing of the hospital. Defendant has also presented undisputed evidence that plaintiff's position was a relatively low level one and that other workers could and regularly did perform her duties. Defendant has shown that plaintiff never presented a college degree to defendant and was not trained to do phlebotomy work. Finally, defendant's evidence shows that the decision to terminate plaintiff's position was made without knowledge of who occupied the position, and plaintiff was the only person in that position. Defendant has clearly articulated a legitimate, non-discriminatory reason, financially necessary staff reductions, for terminating plaintiff's employment.
 
 
 27
 Plaintiff makes several arguments as to why this reason is pretextual. She argues that the reason she was an EKG technician was because defendant had discriminated against her by failing to permit her to attend a class that would help her to advance to the position of cardiology technician. These alleged actions by defendant occurred in 1983 and 1984, see Plaintiff's Exhibit 9, and were the subject of prior EEOC grievances by the plaintiff. They occurred long before the 180 day period prior to the filing of the EEOC charge giving rise to this lawsuit. They therefore are not properly before this court. Further, the evidence plaintiff presents concerning this claim of discrimination shows only that defendant refused to make special arrangements for plaintiff concerning days off. Plaintiff presents no evidence suggesting that defendant permitted other employees to make special arrangements for days off over periods of several weeks. Thus, we find that this evidence fails to establish that defendant's financial difficulties and layoffs were a pretext for discriminatorily discharging plaintiff.
 
 
 28
 Plaintiff also argues that defendant's reason was pretextual in that there were very few, if any, layoffs until after plaintiff was discharged. However, as noted above, the EEOC forms cited in support of this argument were for dates concluding five months prior to plaintiff's discharge. Thus, we find this claim of pretext unsupported.
 
 
 29
 Plaintiff also claims defendant's reson was pretextual because she claims she could have performed the job of laboratory assistant but was not informed of the opening nor offered the job when she inquired about it. It is undisputed that the position required the ability to perform phlebotomy. There is no evidence that plaintiff ever provided defendant with any documentation demonstrating she was trained in phlebotomy. While she testifies she told Rita Kraus that she was so trained, she has presented no certifications or any other evidence of training, and none of the performance evaluations she presents from the hospital indicate she was so trained. Further, as noted above, the hospital's policy was to provide recall rights only to the job held, not to any new job, such as laboratory assistant.
 
 
 30
 Plaintiff further contends that the staff reductions were a pretext for firing her because she was also cross-trained to be a cardiology technician. Her only evidence of this is in her job performance appraisals, which note that "In minor aspects Ms. Khouri has assisted cardiology test as treadmill with good capability needs some assistance and is progress [sic]," and "Recently she has trained in operation of treadmill equipment and although Mrs. Khouri has been a little slow, she is now making progress." Plaintiff's Exhibit 7, p. 2; Exhibit 6, p. 2. Plaintiff provides no evidence concerning the skills required to be a cardiology technician, nor does she provide evidence other than that cited above showing she can work the treadmill, which demonstrate that she was qualified as a cardiology technician. Hence, her contention that her firing was pretextual amounts to the claim that her position as EKG technician was eliminated even though she was qualified as a cardiology technician and should instead have been promoted to that position and someone else in that position with less seniority than herself should have instead been fired. This is pure conjecture and speculation on Ms. Khouri's part and is totally lacking in proof.
 
 
 31
 Therefore, we hold that plaintiff has failed to sustain her burden of presenting a prima facie case and has also failed to rebut defendant's legitimate non-discriminatory reason for terminating plaintiff. Defendant is entitled to summary judgment on plaintiff's claim of racial discrimination.
 
 
 32
 Plaintiff also claims that her firing was in retaliation for her filing a charge with the EEOC. To establish a prima facie case of retaliation, plaintiff must show that she engaged in statutorily protected activity; she suffered an adverse action by defendant; and there is a causal link between the protected activity and the adverse action. Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1313, reh'g denied, 1989 U.S.App. LEXIS 15028 (7th Cir.1989). Plaintiff has clearly demonstrated the first two required elements: filing claims with the EEOC is protected activity, and her job was terminated by the defendant. However, plaintiff has provided no evidence of the third element: a causal link. Plaintiff filed the latter of her two EEOC claims at least eight months prior to her discharge (as noted above, there is a discrepancy concerning whether ont of the charges was filed in April, 1985 or April, 1986). Thus, her discharge was not proximate in time to her protected activity. Further, defendant presented substantial evidence in support of its claim that those who decided to terminate Ms. Khouri's position made the decision without knowing who occupied her position and without any awareness of her EEOC charges. Plaintiff has presented no evidence to the contrary. Rather, she has merely presented her opinion that she was blackballed because of her EEOC claim. Khouri aff. p 5. We find this is insufficient to satisfy plaintiff's burden of presenting a prima facie case and grant summary judgment to defendant.
 
 Conclusion
 
 33
 Defendant's motion for summary judgment is granted.
 
 DATED: February 22, 1990
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 To the extent that Khouri is raising mental abuse and harassment, these issues are waived on appeal. Gray v. Lacke, 885 F.2d 399, 409 (7th Cir.1989)