991 F.2d 799
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William FINCH, Plaintiff-Appellant,
v.
Lynn L. CHAPMAN, M.A.C.M., and United States of America,
Defendants-Appellees.
 No. 92-1471.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 10, 1992.
Decided April 26, 1993.
Rehearing Denied May 21, 1993.
 
 Before COFFEY and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 
 ORDER
 
 1
 After an impersonator joined then deserted the United States Navy, William Finch was twice mistakenly arrested as a deserter. For nearly two and one-half years Finch sued various government entities and Navy officers for constitutional and common law torts. Although the district court found Finch's treatment deplorable, it denied him relief. We agree that the law does not afford Finch relief under the specifics of this case, and we affirm.
 
 I. Background
 
 2
 Dartanyian Morgan, at one time William Finch's neighbor, enlisted in the Navy in 1984. For reasons unknown, Morgan had no desire to serve under his own name; rather, Morgan used Finch's name, Social Security number and other personal information in all communications with the Navy. On January 6, 1987 Morgan abandoned his duty station aboard the USS Theodore Roosevelt. The Navy followed various procedures to inform the Deserter Information Point in Arlington, Virginia and the National Crime Information Center (Crime Center). Of course the Navy's information identified Finch, not Morgan, as the wanted person.
 
 
 3
 On July 3, 1987 Chicago Police officers arrested Finch on suspicion of desertion from the Navy. He spent the night in jail. The next morning the Naval Absentee Collections Unit (Absentee Unit) took custody of Finch and, after determining he was not the deserter, released him the same day. Apparently the Navy officers realized that Finch was not the Navy deserter because Finch stands 5'7 1/2" tall and weighs 222 pounds; Morgan could not have hidden that he stood only 5'4" and weighed 144 pounds. To prevent any subsequent arrest of Finch, or begin tracking down Morgan, the Navy needed to alert the Deserter Information Point and the Crime Center of the error. The record still does not reflect whether either the Deserter Information Point or the Crime Center were properly notified.
 
 
 4
 Over a year later, on September 25, 1988 Illinois State Police officers arrested Finch on suspicion of desertion, and he again spent the night in the local jail. The same division of the Absentee Unit involved the previous year took custody of Finch the next day and transported him to the Great Lakes Naval Base. This time, however, the Navy did not so readily release him. By September 27 the Navy had shaved Finch's head, ordered him to perform physical labor and confined him to certain barracks. Later that day he was permitted a telephone call. By September 28 an attorney had filed a writ of habeas corpus and the Navy then released Finch.
 
 
 5
 During the one-year period between the first and the second arrest, Lynn Chapman was the Chief Petty Officer in charge of the Absentee Unit at Great Lakes. After the first arrest, Finch was released within an hour after meeting with her. After the second arrest, however, Chapman was on leave and Finch's file was locked in her desk drawer. Apparently no changes had been made in the information known to the Deserter Information Point or the Crime Center. With the records regarding Finch's first arrest in Chapman's desk, and with medical, dental and other information unavailable, the second detention lasted ninety-six hours. In attempting to seek redress for his injuries, Finch sued a number of defendants and the district court entered a series of rulings. In the district court's final order from which this appeal is taken, the court concluded that defendant Chapman was protected by qualified immunity and dismissed the United States on res judicata grounds.
 
 II. District Court Proceedings
 
 6
 The district court in this case granted defendants' numerous motions to dismiss and for summary judgment. The court also granted plaintiff's numerous motions to reinstate the case. Interspersed among the many orders were what the court purported to be three final judgments. Given the cloudy procedural posture, a tedious recitation of the district court proceedings is necessary.
 
 
 7
 On November 14, 1989, Finch filed his original complaint against the United States and the Navy. After a motion to dismiss and memorandum in support thereof, Finch elected to amend the complaint and identified the United States and certain named Naval officers (Robert George, Robert Harvey and Elva Kopenhafer) as defendants. They amended their motion to dismiss to argue sovereign immunity, and Finch failed to respond. The district court granted the defendants' motion, with prejudice, and entered a final judgment on July 9, 1990.
 
 
 8
 On August 8, 1990, Finch filed a motion for reconsideration. Finch did not ask the court to reinstate the case as to the United States or as to the individual defendants in their official capacities. Rather, Finch noted that the defendants' motion did not address Finch's personal capacity claims. The court thus allowed the case to go forward as to Kopenhafer, Harvey and George in their personal capacities.
 
 
 9
 George and Harvey moved to dismiss for failure to procure service of process, which the court granted. Kopenhafer moved to dismiss and, in the alternative, for summary judgment. To the extent that Finch argued claims concerning the defendants' official capacity and those arising under the Federal Tort Claims Act, the court granted the motion to dismiss. On the personal capacity claims the court granted summary judgment.
 
 
 10
 Kopenhafer was an officer involved in Finch's first arrest. She also recognized Finch when the Navy brought him into the Great Lakes base a second time, and she informed her superiors that the Navy was holding the wrong man. Finch complained that Kopenhafer should have followed up more on behalf of Finch. But because Finch had failed to set forth material facts pursuant to local rules 12(m) & (n), the court accepted the defendants' assertion that Kopenhafer acted according to Navy regulations and did not otherwise violate any clearly established constitutional right of which a reasonable officer would have known. In essence the district court granted Kopenhafer qualified immunity.
 
 
 11
 On February 13, 1991, the district court entered a final appealable judgment as to all claims and all parties. Finch did not then, and does not now, appeal from this ruling.[1]
 
 
 12
 Rather than appeal the February 13 judgment, Finch moved to file a second amended complaint against Lynn Chapman on March 12, 1991. Finch's deposition of Kopenhafer on February 7 had revealed Chapman's identity and role in this matter. On March 29, 1991 the district court denied Finch's motion to file a second amended complaint and instructed him that the case was indeed over and to file a new complaint with the clerk. Undaunted, on April 16, 1991 Finch filed a motion to reconsider, (in essence a motion to reconsider the denial of his motion to reconsider), which the district court granted without comment. The court denied Chapman's motion to dismiss for lack of service of process, and related the second amended complaint back to the amended complaint under Fed.R.Civ.P. 15(c). The defendants do not appeal this ruling.
 
 
 13
 Count I of Finch's second amended complaint alleged violations of his constitutional rights protected by the Fourth, Fifth and Fourteenth Amendments, citing Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Specifically, Finch charged that Chapman failed to update his records after the July 4, 1987 arrest, which directly caused his subsequent arrest a year later. Counts II through IV alleged common law tort claims involving damage to Finch's character and reputation, defamation, battery, false arrest and imprisonment. On October 19, 1991 the district court allowed the United States to substitute as the proper defendant on Counts II through IV. Finch, however, does not appeal this ruling. On January 29, 1992 the district court granted the United States motion to dismiss Counts II-IV on the grounds of res judicata; the court also granted Chapman's motion for summary judgment on the grounds of qualified immunity. From this judgment Finch appeals.
 
 III. Discussion
 
 14
 A. Qualified immunity.
 
 
 15
 The parties do not dispute that Chapman merits qualified immunity only where a reasonable person could have believed that her actions were lawful in light of clearly established law and the information she possessed. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Finch recites the constitutional right in question by quoting only the Fourth Amendment, that "The right of the people to be secure in their persons, ... against unreasonable searches and seizures, shall not be violated." Even if we accept that Finch was searched and seized within the meaning of the Amendments, Finch does not allege that Chapman actually searched or seized him. Rather, Finch argues that his detention
 
 
 16
 was a direct result of her hiding or sequestering Finch's case file regarding his first improper arrest. For over one year prior to Finch's second arrest, Chapman concealed this information and failed to take proper steps to update Finch's file. [App.B., p. 17]
 
 
 17
 Chapman responds that the uncontroverted facts show that pertinent Navy regulations gave her no authority or responsibility to correct Finch's records with the Deserter Information Point or the Crime Center.[2] If this is true, a critical element of causation is missing. Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir.1988); see Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983) (in the context of section 1983, an individual cannot be held liable unless he caused or participated in the constitutional deprivation). Cf. Bonner v. Coughlin, 545 F.2d 565, 568-69 (7th Cir.1976), cert. denied, 435 U.S. 932 (1978) (a person becomes liable for a failure to act only where he owes a duty to the plaintiff). In their brief, the defendants outlined the process:
 
 
 18
 Operationally, Secretary of the Navy Instruction 1620.7 establishes a centralized Deserter Information Point located at BUPERS [the Bureau of Naval Personnel], Arlington, Virginia, and many field Absentee Units--including Absentee Unit, Great Lakes. Naval Military Personnel Command Instruction 1600.3 is the Standard Operations Manual for the Navy Deserter Branch/Deserter Apprehension Program located at BUPERS, Arlington, Virginia. Its provisions are not applicable to the Great Lakes Absentee Unit, and therefore placed no legal obligation on Chapman.
 
 
 19
 The defendants articulated as much in their statement of material facts not in dispute, to which Finch did not respond. According to the district court's local rule 12(n), "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." The district court also noted that once Chapman identifies the absence of genuine issues of material fact, the law requires Finch to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 
 20
 For the first time on appeal Finch raises the argument that because the district court stayed discovery, he could not challenge whether the Navy regulations indeed gave Chapman no authority or responsibility for Finch's arrest and detention.[3] This argument comes too late. Under Fed.R.Civ.P. 56(f), if Finch had arguments that rested on discovery, he should have stated his reasons to the district court as to why he could not adequately respond absent further discovery. Also militating against Finch's argument is that the defendants spoon-fed to Finch the cause of his second arrest and detention.[4] He simply failed to satisfactorily pursue the proper parties.
 
 
 21
 Given that the facts establish that Chapman had no authority or responsibility to correct Finch's records with the Deserter Information Point or the Crime Center pursuant to the applicable Navy regulations, and that the United States and the Department of the Navy, not Chapman, accepted the responsibility for Finch's alleged injuries, the district court properly granted summary judgment to Chapman.
 
 
 22
 B. Res judicata.
 
 
 23
 After the United States was substituted as the proper defendant on Counts II-IV, the district court granted the United States' motion to dismiss on the grounds of res judicata based on the July 9, 1990 judgment.
 
 
 24
 Under the doctrine of res judicata (claim preclusion), a final judgment on the merits of an action bars further claims by the parties or their privies based on that same action. Moreover, res judicata bars not only those issues that the parties actually litigated, but also any issue which the parties could have raised in the prior action.
 
 
 25
 Gray v. Lacke, 885 F.2d 399, 404-05 (7th Cir.1989), cert. denied, 494 U.S. 1029 (1990). Res judicata involves three elements: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." Barnett v. Stern, 909 F.2d 973, 978 (7th Cir.1990) (citation omitted).
 
 
 26
 First, the parties dispute whether the July 9, 1990 and the January 29, 1992 judgments involve identical parties. Chapman argues that in the former the United States substituted for defendants George, Kopenhafer and Harvey, while in the latter the United States substituted for defendant Chapman.[5] This argument, however, is not availing. Suits against government employees are essentially suits against the government as an entity. Gray, 885 F.2d at 405. And Finch cannot seriously deny that Chapman was in privity with the United States. Id.
 
 
 27
 Second, Finch does not challenge whether the judgments involve identical causes of action. Rather, he argues that application of res judicata falters under the third element: specifically, the district court never entered a final judgment on the merits. On July 9, 1990 the district court entered final judgment "with prejudice to all claims raised in Finch's amended complaint." Finch chose not to appeal. Rather, on August 8, 1990, Finch filed a motion for reconsideration, which the court granted, allowing the case to go forward as to Kopenhafer, Harvey and George in their individual capacities.[6] On February 13, 1991 the district court entered a second final judgment as follows:
 
 
 28
 We dismiss the complaint against George and Harvey. We dismiss the common law tort and constitutional negligence claims against Kopenhafer, and grant summary judgment in Kopenhafer's favor on the remaining counts and claims.
 
 
 29
 Again, Finch chose not to appeal. Rather, he moved to file a second amended complaint against Chapman on March 12, 1991. Finch's motions for reconsideration (on August 8, 1990 and March 12, 1991) were not made within ten days of the entry of final judgment. Thus, the motions were not timely under Fed.R.Civ.P. 59 and did not extend the time in which to appeal either judgment. Browder v. Illinois Dep't of Corrections, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7 (1978). Rule 60(b), which gives the district court power to grant a party relief from judgment, does not "affect the finality of a judgment or suspend its operation." See Smith-Bey v. Hospital Adm'r, 841 F.2d 751, 754-55 (7th Cir.1988). Even if we were to accept Finch's argument that the district court's entry regarding the United States may not have been final on July 9, 1990, it certainly became final on February 13, 1991. Trustees of Ind. Univ. v. Aetna Casualty Surety Co., 920 F.2d 429, 433 (7th Cir.1990) (any interlocutory orders from which no appeal lies is merged into, and appealable from, the final judgment).
 
 
 30
 The repercussions of res judicata in this case demand that when a suit involves the United States, the plaintiffs must sue the proper parties before the entry of judgment. To rule otherwise would expose federal and state governments, and possibly any organization, to multiple lawsuits concerning the same injury, as the plaintiffs simply file successive complaints against different individuals. Such a policy has no legal foundation. If a final judgment has issued, res judicata bars any claim which the parties could have raised in the first action. Gray, 885 F.2d at 404-05. Having failed to include Chapman in the complaint involving George, Kopenhafer and Harvey, Finch is properly barred on the grounds of res judicata from litigating against the United States a second time.
 
 IV. Conclusion
 
 31
 After Finch filed his original complaint against the United States and the Navy, he decided not to respond to the defendants' arguments that they were entitled to sovereign immunity. That decision made futile the subsequent pursuit of this lawsuit. For the foregoing reasons, we AFFIRM the decisions of the district court.
 
 
 
 [1]
 Throughout this case the United States has argued and the district court adopted the July 9, 1990 judgment as final and appealable. The parties have not focused on the February 13, 1991 judgment. No matter. Finch, in his jurisdictional statement, confines his appeal to the "judgment against Plaintiff on January 29, 1992."
 
 
 [2]
 We need not reach Chapman's argument that Finch has failed to articulate a clearly established constitutional right. Even accepting that a breach of the Constitution occurred, Finch must identify the person who caused the breach. Finch cites to Chapman's candid acknowledgement of responsibility for his second arrest as "a cumulation of errors which I set in motion by not following through on an investigative lead in July 1987." We agree with the district court that Chapman's sense of responsibility was a moral one, and not dispositive of the question of legal liability
 
 
 [3]
 In his response to the defendants' motions in the district court, Finch asked for further discovery only "to determine the extent of [Chapman's] motives ... for failing to adhere to naval regulations." Finch never challenged the propriety of those regulations
 
 
 [4]
 In fact, the defendants, in their motion to dismiss and for summary judgment to the district court, admitted openly that the responsibility for listing the plaintiff as a Naval deserter belonged to the USS Theodore Roosevelt and the Deserter Information Point at BUPERS in Arlington, Virginia. They also admitted that:
 Any responsibility for correcting or deleting the information in either the Form DD 553 or FBI's NCIC system, which constituted the proximate cause of plaintiff's arrest and subsequent alleged damages, belongs to the Department of the Navy and the United States of America; not defendant Chapman individually. [Memo, pp. 19-20]
 Of course, since the United States and the Navy were dismissed earlier from this case on grounds of sovereign immunity (in the face of no response from Finch to their motion to dismiss), it's no wonder the defendants offered to assign the responsibility to immune parties.
 
 
 [5]
 Regarding Finch's non-constitutional claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq.,
 The remedy against the United States ... for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim....
 28 U.S.C. § 2679(b)(1).
 Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States, ... and the United States shall be substituted as the party defendant.
 Id. § 2679(d)(1).
 
 
 [6]
 Although the parties do not address the propriety of the district court's ruling on this issue, we note that pursuant to 28 U.S.C. § 2679(d), the FTCA does not recognize a distinction between individual and official capacity suits. Once the Attorney General certifies that the federal employee was acting within the scope of his employment, 28 U.S.C. § 2679(d)(1), the United States is thereafter the only proper defendant. Aviles v. Lutz, 887 F.2d 1046, 1049 (10th Cir.1989)